DEBORAH BROOKS, by her next friend and father, GAYLORD BROOKS, and GAYLORD BROOKS, appellees, v. ROBERT H. GILBERT et ux., appellants.

No. 49728.

(Reported in 98 N.W.2d 309)

SEPTEMBER 22, 1959.

Steward, Crouch & Kelly, of Des Moines, for appellants.

Duffield & Pinegar, of Des Moines, for appellees.

PETERSON, J.—On June 27, 1957, about 11:00 a.m., defendant Robert H. Gilbert, driving a Chevrolet car, struck plaintiff Deborah Brooks, six years old. The car was registered in his wife's name and she is a codefendant. Deborah was crossing Hull Avenue in Des Moines. She was seriously injured. A verdict was returned in her favor for $54,750, and in favor of her father, for his expenses, of $2495.21. Motion for new trial was overruled. Defendants appeal.

Appellants assign seventeen alleged errors. Since we are reversing and remanding on three errors as to misconduct of attorneys, and admission of certain evidence, we will primarily consider only such errors.

I. Hull Avenue runs east and west. Mr. Gilbert was driving west. The accident occurred immediately west of where First Street intersects Hull Avenue. This is between the Brooks yard on the northwest corner of First and Hull, and the Wheeler

residence on the southwest corner of the two streets. At this point there is an offset on First Street as it enters and leaves Hull Avenue, placing the Brooks residence farther east than the Wheeler residence. Hull Avenue at that point is in the 25-mile-speed area zone.

During the morning Deborah Brooks (commonly known as Debbie), Dannie Wheeler, eleven at that time, Steve Wheeler and Eddy Marello, both younger, were playing in the Wheeler and Brooks yards with a number of toy trucks and cars. They were back and forth between the two yards several times, but just before the accident Dannie and Eddy were at the Brooks home, on the north side of the street and Debbie was in the Wheeler yard, on the south side. Because of the offset the boys were farther east than Debbie.

Outside of defendant Gilbert the only witnesses to the accident were Dannie Wheeler, Eddy Marello, and Mr. Kirchner, a neighbor, who was not a witness at the trial. Dannie was 13 at time of trial, and testified. Eddy was in the courtroom but for some reason was not called as a witness.

Dannie first testified Debbie was running across the street from south to north, but later said she was walking. His final testimony, under cross-examination, was: "I didn't see this car coming or didn't see Debbie crossing the street until I heard the brake and I looked over and saw her in front of the car."

Defendant testified he saw the two boys on the north side of the street, slowed to between 15 and 20 miles an hour, and did not see the little girl until she was directly in front of his car. The left front fender and headlight struck her. The car did not run over her, but tossed her through the air for some distance. There is conflict in the evidence as to the distance defendant drove after he saw her, and also as to the distance she was tossed. Defendant testified he stopped in less than a car length, but Officer Allen Simmons testified the skid marks indicated a distance of about 40 feet. These are questions of fact, which are exclusively in the realm of the jury. Our concern arises only in getting the proper and material facts before the jury, without prejudicial questions, or erroneous trial court rulings.

. It is in connection with Exhibits C, D and E, photographs taken by Officer Simmons, that errors one and two are assigned.

▮ II. We will consider first appellants' assignment of error as to misconduct of plaintiffs' counsel in connection with undue and prejudicial repetition of questions concerning the three exhibits.

Officer Simmons arrived 20 or 25 minutes after the accident. He supervised Debbie's removal to the hospital in the ambulance. He then proceeded to take photographs and to question defendant Gilbert, Dannie Wheeler and Eddy Marello. He took the photographs described as Exhibits 1, B, C, D and E. No errors are assigned as to introduction of Exhibits 1 and B.

He talked with Dannie and Eddy as to where they said the car struck Debbie. On the basis of this information he marked a white circle on the pavement, about 4 or 5 feet in diameter, indicating the spot of contact, as they stated, which circle appears on Exhibits C, D and E. Plaintiffs' counsel then proceeded to establish the circle as the point of impact, and to introduce the Exhibits, *by the testimony of Simmons only*.

Simmons testified concerning the circle on the exhibits:

"Q. Did you make any examination to determine the point of impact of the automobile and the child? A. I did.

"Q. On the street? A. First I looked the general area over and I found fresh dirt which had apparently come from the automobile. I talked to the witnesses. I had the ones that saw the accident *point out to me where they saw her get hit* at, and I *arrived at the real point of impact from that.* * * *

"Q. Where did you establish that point of impact?

"Mr. Steward: * * * Objected to as calling for his opinion and conclusion, and as calling for testimony based on hearsay.

"The Court: Sustained."

Counsel again asked Simmons:

"Q. I note also in Exhibit E on the pavement what appears to be a white circle. Do you know who put that there? * * * A. I did."

Mr. Steward, by permission from the court, asked:

"Q. Was that circle intended to indicate something as to the point of impact, what you concluded was the point of impact? A. Yes sir." (Same objection; same ruling.)

Including the two above questions plaintiffs' counsel asked about the circle on Exhibits C, D and E *thirteen* times in an attempt to get them introduced. Thirteen times proper objections to the questions were made and sustained.

The questions were not all similarly worded, but had the same ultimate purpose.

Officer Simmons did not see the accident. His testimony, based on what Dannie and Eddy told him as to the point of impact, was clearly his opinion and conclusion, and based wholly on hearsay. The matter of the point of contact was important and material. It pertained to how far defendant skidded, and how far Debbie was thrown after she was struck. These were matters the jury would consider in arriving at defendant's speed, and whether or not he could have stopped after he saw her. *This fundamental fact should not be permitted to rest on opinions, conclusions and hearsay evidence.*

The result of the repetition of the question, although objections were sustained, was to indelibly fix in the minds of the jurors that the circle was the point of impact. The prejudicial damage to defendants was not in any answer given by the witness, because all objections were sustained, but by the emphasis created through repetitious questioning.

We have held in several recent cases that such procedure is misconduct by counsel, and prejudicial to opposing party. Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327; Pierce v. Heusinkveld, 234 Iowa 1348, 14 N.W.2d 275; State v. Tolson, 248 Iowa 733, 82 N.W.2d 105. Also see: Paul v. Drown, 108 Vt. 458, 189 A. 144, 109 A. L. R. 1085, also Comments, 1089 to 1096; 39 Am. Jur., New Trial, section 65; Louisville & N. R. Co. v. Payne, 133 Ky. 539, 118 S.W. 352; Comment note, 109 A. L. R. 1089.

Maland v. Tesdall, supra, was an automobile accident case. The objectionable questions pertained to drinking of intoxicating liquor, and the questions assumed some facts not present in the case. We said at pages 968, 969 of 232 Iowa:

"While it was proper for appellee to show the use of liquor by the driver and the other occupants of the car on the night of the accident, we think the bounds of propriety were exceeded.

A prejudicial course of examination was pursued. Incompetent questions which assumed the existence of damaging facts were frequently asked. The questions and not the answers seem to have been considered important. Such questions were repeated despite the sustaining of objections thereto."

The case was reversed, primarily on above basis.

In Pierce v. Heusinkveld, supra, also reversed, the above statement was quoted with approval. The case involved a similar question as to use of intoxicating liquor. We quote further (page 1353 of 234 Iowa) :

"There was no testimony introduced that in any way intimated that the witness or any of his associates had been drinking during the evening that the collision occurred. To infer that this was the case could have no other effect than to result in prejudice to the appellants' cause."

In State v. Tolson, supra, the attorney for the State asked some highly incompetent and hearsay questions, on the basis of which we reversed, and stated at page 741 of 248 Iowa: "It seems likely that the effects of the poison interjected by the question alone would be difficult to remove, and the motion for a mistrial was well founded."

39 Am. Jur., New Trial, section 65, page 81, states as follows: "So, it will constitute ground for a new trial if counsel, in disregard of the court's ruling that a certain line of evidence is inadmissible, persists in attempting to get such evidence before the jury, to the prejudice of the unsuccessful party."

In Paul v. Drown, supra, at page 462 of 108 Vt., page 146 of 189 A., the court states: "It is no answer to say that the plaintiffs were not harmed because the evidence was excluded, for the prejudice inhered in the offer itself."

The matter is clearly stated in the Comments in 109 A. L. R., 1089, as follows: "Much of this misconduct has consisted of knowingly asking improper questions. In many cases the attorney complained of has persistently pursued a wholly unjustified and prejudicial course of interrogation, notwithstanding objections made and sustained, clearly calling to his attention, if such a thing could be deemed necessary, that the ques-

tions asked were without any plausible legal foundation. Reversals have frequently been granted in cases of that extreme character."

■ III. The second assignment of error is that after thirteen unsuccessful attempts to get Exhibits C, D and E in evidence, the court announced it was going to admit them, with an instruction to the jury to pay no attention to the circle.

The Court said: "* * * The whole thing involved here is whether or not the conclusion that the officer reached is admissible, and I have held it is not. I think I will admit all of the Exhibits and give an instruction to the jury that they will pay no attention to the circle. That way you will have all other material which I think is appropriate, and the incompetent matter I will caution the jury to pay no attention to it. With that understanding I will change my ruling and admit Exhibits C, D and E * * *. I will admit them with the exception there will be a cautionary instruction to pay no attention to that circle."

Instruction No. 18 states: "Certain photographs have been admitted in evidence showing a light colored circle which was drawn on the pavement by Officer Simmons before the photographs were taken. This circle is shown to represent certain improper and inadmissible conclusions of the witness, based in part on hearsay to which you should give no consideration. You may consider such photographs for other purposes but you should give no consideration to such circle or any of the testimony with respect thereto."

The admission of the three exhibits under the circumstances, in spite of the instruction, was prejudicial error. This is especially true when considered in connection with the misconduct of plaintiffs' counsel as outlined in Division II.

It would only be human nature that the first object the jury would look at on the exhibits would be the circle. It had repeatedly been directed to their attention by the many questions of plaintiffs' counsel.

In addition to the emphasis placed on the circle by repeated questions, defendants were also prejudiced by the fact that their counsel was forced to make numerous objections. To a

layman that may indicate an attempt by defendants to unduly keep some fact from the jury; clearly to the prejudice of defendants.

The trial court indicated it wanted the jury to see Exhibits C, D and E as photographs of Hull Avenue and the adjoining area. It was unnecessary to use these exhibits for that purpose. Exhibits 1 to 5 inclusive and Exhibits A, B and G were all photographs of the street and adjoining area, whereon the circle did not appear. With the exception of Exhibit 1, which was taken before the placing of the circle, the other exhibits were taken sometime after the date of the accident. These photographs, admitted without objection, gave the jury complete information about the street and the surrounding area.

IV. In the first assignment of errors appellants raise the question of persistent repetition of improper questions without regard to the rulings of the trial court. This occurred not only as outlined in Division II, but also on cross-examination of defendant.

 Plaintiffs' counsel, on cross-examination, challenged defendant Gilbert to go with him to the scene of the accident, re-enact his approach to the place where Debbie was hit, stop his car, and measure the skid marks. He repeated this request four times as to various phases of the accident. Each time objection was made, as not proper cross-examination, and sustained by the trial court.

Trial Judges often properly permit juries, with bailiff and attorneys for both parties present, to proceed to the scene involved to view the premises. However, such examination never permits a simulation of an automobile accident. There are so many variables involved in such an experiment that it would be impossible to correctly re-enact an accident, like the one in the case at bar, in such a manner that the results would be reliable and dependable.

The attorneys entering upon the trial of a case should be prepared to offer the evidence in court in a dignified and orderly manner. The interrogation in which plaintiffs' counsel indulged was a dramatic act, prejudicial to defendants, whose counsel was forced four times to raise objection.

Appellees cite two Iowa cases in support of their conten-

tion that it was proper to ask defendant to participate in this experiment: State v. Case, 247 Iowa 1019, 75 N.W.2d 233; and State v. Benson, 230 Iowa 1168, 300 N.W. 275. Careful examination of these two cases fails to disclose any similar or comparable facts to the case at bar.

V. The answer of appellees to appellants' assignments of error as to misconduct in repeated questioning concerning incompetent and hearsay evidence is threefold: 1st: Exhibit 1, which was admitted, shows the same circle as appears on Exhibits C, D and E. 2nd: Dannie identified the circle as the point of impact on Exhibit E. 3rd: The conversation with Dannie Wheeler concerning the point of impact was part of the res gestae, and therefore admissible.

1. As to the first contention it is completely fallacious. It is true Officer Simmons so testified but he was mistaken. A careful study of Exhibit 1 shows that no circle appears on the photograph. It shows the rear of defendants' car. The only marks on the pavement are: back of the rear left wheel appear three straight white lines, and back of the rear right wheel two straight white lines, each about two feet long, all unexplained in the evidence.

2. Dannie testified: "Exhibit E shows where the cars were [the small cars the children were playing with] and where Debbie was standing and where she got hit at."

This is all the testimony by Dannie in the record as to the place of impact. It is true there is a circle on Exhibit E, but Dannie does not say or indicate that this was the place at which she was hit. To exhibit a photograph and simply say it shows where she was hit, without indicating or explaining where on the exhibit the impact occurred, is a meaningless statement to a jury.

3. As to the third contention the situation and the conditions were not such as to establish the conversations with Dannie as part of the res gestae.

After the accident the first to arrive was the ambulance; then the KIOA television mobile car; then the police in the person of Officer Simmons. He arrived in about 20 to 25 minutes. He was on the scene 20 to 25 minutes, questioning witnesses and taking photographs.

■ We have established certain elements which must be present to accept statements as part of the res gestae. 1. The expression must be spontaneous. 2. It must be so closely connected with the transaction as to remain a part of the excitement, and thus exclude opportunity for fabrication. State v. Berry, 241 Iowa 211, 40 N.W.2d 480; Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, 175 N.W. 81; State v. Brooks, 192 Iowa 1107, 186 N.W. 46; 32 C. J. S., Evidence, section 417.

Officer Simmons' conversation with Dannie does not measure up to these specifications. Upon questioning by the officer, and at least one-half hour after the accident, Dannie pointed out a spot he thought was the point of impact. It was a deliberate discussion of the situation; there was no spontaneity involved. His conversation with Dannie could not be called a part of the excitement. The accident had happened some time earlier, Debbie had been removed to the hospital, and Officer Simmons was quietly and deliberately discussing the matter with the boys.

The question of res gestae was considered by this court, at some length, speaking through JUSTICE SMITH, in State v. Berry, supra. He stated the elements succinctly at page 215 of 241 Iowa, as follows: "Spontaneity and such closeness of connection with the transaction as to exclude any presumption of fabrication are the essentials."

In Stukas v. Warfield-Pratt-Howell Co., supra (page 888 of 188 Iowa), we state that the test of admissibility of the statements "is whether they relate to the principal transaction and are explanatory of it, and are made under such circumstances of excitement, still continuing, as to show that they are spontaneous and not the result of deliberation or design." This is quoted and approved in the Berry case.

As a result of consideration of the meaning of res gestae in many jurisdictions, the following appears in 32 C. J. S., Evidence, section 403, page 21: "The test of the admissibility of evidence as a part of the res gestae is whether the act, declaration, or exclamation is so intimately interwoven or connected with the principal fact or event which it characterizes as to be regarded as a part of the transaction itself, and also whether

it clearly negatives any premeditation or purpose to manufacture testimony."

Appellees cite four Iowa cases in support of their position with reference to res gestae. None of the cases varies from the definitions we have set out. In fact we have quoted from two of the cited cases, State v. Berry and Stukas v. Warfield-Pratt-Howell Co., both supra. Nothing appears in the two other cases cited by appellees changing the general rule.

It is not necessary to consider at length any other alleged errors. Discussion of the question of newly discovered evidence is moot. The verdict is extremely excessive, but since we are reversing and the case will be retried, and since passage of time may affect plaintiff's physical condition, we will refrain from any suggestion as to amount of reduction. Defendants filed motion for mistrial on the basis of the errors we have discussed, which was erroneously overruled. We do not find errors which would justify reversal in any of the other assignments.

By reason of prejudicial errors the case is reversed and remanded for new trial.—Reversed and remanded.

All JUSTICES concur.