**GRAND TRUNK WESTERN RAILROAD COMPANY, Appellant (Defendant Below),**

v.

**David M. PURSLEY, Administrator of the Estate of Patricia C. Shawver, deceased, Appellee (Plaintiff Below).**

No. 46A03–8802–CV–64.

Court of Appeals of Indiana, Third District.

Nov. 17, 1988.

Rehearing Denied Dec. 15, 1988.

Robert J. Konopa, Kramer, Butler, Simeri, Konopa & Laderer, South Bend, for appellant.

Hugo E. Martz, Valparaiso, Steven A. Hale, Michigan City, for appellee.

STATON, Judge.

Grand Trunk Western Railroad Company (Grand Trunk) appeals the trial court's order granting a new trial. We have consolidated and restated the issues as follows:

Whether, during a jury view, a party is permitted to re-create the scene of an accident.

Affirmed.

At about 7:00 p.m. on November 18, 1982, Patricia C. Shawver was struck and killed by a Grand Trunk train approximately 738 feet east of Yellowstone Road in Valparaiso, Indiana. David M. Pursley, as personal representative of Shawver's estate, sued Grand Trunk for her death.

At trial, Grand Trunk requested a jury view of the scene of the accident. Pursley did not object to the jury view as long as conditions at the scene were substantiated by the evidence, no dummies were used, and the trial judge or court reporter was in attendance. The court granted the motion for a jury view and admonished the jury that the view was not evidence and that no one was to talk during the view. However, he did not rule that Grand Trunk could not re-create the scene of the accident, as substantiated by the evidence, although he was made aware of Grand Trunk's plans to do so.

On the evening of August 14, 1987, the jury was taken to the scene of the accident by the bailiff. The trial judge and the court reporter did not attend. Harlow Douglas Smith, the Grand Trunk engineer who was in the lead locomotive on the night of the accident, assisted in the placement of three dummies on the tracks where the accident occurred.

The jury was split into two groups. Each group made two runs in the cab of the locomotive; the locomotive travelled at

about 10 and 20 mph toward the dummies on the track. The runs were made between 10:30 p.m. and 11:00 p.m. The locomotive used was of the same size, light intensity, and other dimensions of the lead engine involved in the accident. The light in the cab was left on during one of the runs.

The next day, in court, Pursley objected to the view, contending the view had transgressed the bounds of a proper view and had become demonstrative evidence requiring a foundation. Pursley further objected to the view because he did not have the opportunity to cross-examine or to object to portions of the view. Grand Trunk requested the opportunity to lay a foundation for the view, but the court denied the request. Thus Grand Trunk made an offer to prove in which counsel questioned Smith, the engineer, regarding the similarities between the night of the accident and the jury view.

The court overruled Pursley's objections and submitted the case to the jury. The jury returned a verdict for Grand Trunk, and the court entered judgment. Pursley then filed a Motion to Correct Errors in which he contended, among other things, that the trial court had erred in granting the jury view without limitations, in refusing to attend the view, and in refusing to instruct the jury after the view that the view was not evidence. He requested a new trial. The court did indeed order a new trial; it is from that order that Grand Trunk appeals.[1]

A trial court's action in granting a new trial is given a strong presumption of correctness. In reviewing such action, we examine the record to determine only whether (1) the trial court abused its discretion; (2) a flagrant injustice has been done; or

(3) a very strong case for relief from the new trial order has been made by appellant. *Capitol Neon Signs, Inc. v. Indiana Nat'l Bank* (1986), Ind.App., 501 N.E.2d 1082, 1084. If any of the trial court's stated reasons for its decision are proper, or, if any unstated theory requires a new trial we must affirm the decision. *J.C. Penney Co., Inc. v. Wesolek* (1984), Ind. App., 461 N.E.2d 1149, 1151, *modified on other grounds.*

Here, we find that we must affirm the decision for reasons even more specific than those given by the trial court. In *Brooks v. Gilbert* (1959), 250 Iowa 1164, 98 N.W.2d 309, the Iowa Supreme Court stated:

> Trial judges often properly permit juries, with bailiff and attorneys for both parties present, to proceed to the scene involved to view the premises. However, such examination never permits a simulation of an ... accident. There are so many variables involved in such an experiment that it would be impossible to correctly re-enact an accident ... in such a manner that the results would be reliable and dependable.

*Id.,* 98 N.W.2d at 314.

While we will not go so far as to hold that a jury view *never* permits the simulation of an accident, we do hold that the simulation attempted here transgressed the bounds of a proper jury view.

In Indiana, juries are not to consider the facts observed in viewing the premises as evidence. *Shular v. State* (1886), 105 Ind. 289, 4 N.E. 870, 872; *see also Jeffersonville, M. & I.R.R. v. Bowen, supra.* Jury views are intended only to assist the trier of fact in understanding and evaluating the evidence. *McCormick on Evi-*

---

1. The trial court issued its order upon the following basis:

> The Court finds error in the trial of this matter regarding the jury viewing the location of the incident. It is well established by the case law of this State that such viewings are within the discretion of the Court. *Jeffersonville, M. & I.R.R. v. Bowen,* 40 Ind. 545 (1872). However, the conditions of this viewing closely resemble a demonstration, thus demonstrative evidence. Demonstrative evidence must

be controlled by the court, and the opposing party must have the opportunity to cross examine the relevant witnesses. *Pilkington v. Hendricks County Rural Elec. Membership Co.,* 460 N.E.2d 1000 (Ind.App. 1 Dist.1984).

In this case, the defendant did not establish a proper foundation before the demonstrative evidence was put before the jury. Therefore, the evidence presented as a viewing was demonstrative and not admissible.

Appellant's Pre–Appeal Statement.

*dence,* Third Edition, Ch. 21, Sec. 216, page 680 (1984).

Here, a proper jury view would have merely given the jurors a general understanding of the site of the accident. Instead, Grand Trunk attempted to put the jurors in essentially the same position the Grand Trunk crew occupied on the night of the accident. As a result, the jurors may have received new information which influenced their verdict. This was particularly likely since the judge was not present to rule on the propriety of each of Grand Trunk's actions during the jury view; there was no court reporter to transcribe what occurred in order to preserve any error for appeal; Grand Trunk was solely in charge of the view and, thus, could control the variables which made up the view; and there was no opportunity for cross-examination.

Even if it were proper generally for one party to re-create the scene of an accident, it was not proper here where Grand Trunk failed to show that its re-enactment actually matched what occurred on the night of the accident.

Indeed Grand Trunk failed to show that the dummies were of the same height and weight as the victim; that the tracks and weather were the same; that all jurors had twenty-twenty vision as the Grand Trunk crew did; that the jury, while in the engine, viewed the tracks from the same position as each member of the crew; that the train was operated in the same manner as it was on the night of the accident; that the jurors' eyes had time to adjust since the engineer had been operating the train at least 35 minutes before the accident; that the same lighting conditions prevailed; or that the train shifted the same as it did on the night of the accident, among other things.

Thus, we hold that in this situation, where Grand Trunk attempted to re-create the scene of an accident and failed to show that all conditions were the same; where no judge or court reporter attended the view; and there was no opportunity for cross-examination, the jury view constituted reversible error and the trial court was correct in ordering a new trial.[2]

AFFIRMED.

GARRARD, P.J., and HOFFMAN, J., concur.

---

**2.** This case is distinguishable from *Williams v. Bethany Volunteer Fire Dep't* (1983), 307 N.C. 430, 298 S.E.2d 352. There, the North Carolina Supreme Court held that a jury view of a fire truck moving with lights flashing and siren sounding was competent to illustrate the testimony of witnesses, reversing the court of appeals decision holding the view was an improper experiment. In *Williams,* the jurors merely viewed a fire truck—the fire truck approached them with lights on and siren sounding. A proper foundation was laid for the view because all of the evidence indicated that the identical fire truck was used and that the flashing lights and siren were in the same condition as at the time of the occurrence in question (fire truck—car wreck). There was no attempt, as here, to re-create the accident or to introduce new evidence.