Mark Edward SIMMONS,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A04–9806–CR–322.

Court of Appeals of Indiana.

Oct. 14, 1999.

Jeffrey D. Stonebraker, Chief Public Defender, Jeffersonville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge.

Mark Edward Simmons appeals his convictions, after a jury trial, of attempted murder, a Class A felony, and aggravated battery, a Class B felony. He raises five issues on appeal, which we restate as:

1. Whether the trial court erred by allowing into evidence a rifle and rifle ammunition not involved in the shooting;

2. Whether it was error for the trial court judge to accompany the jury to a jury view;

3. Whether the trial court erred by instructing the jury members that they were the "moral conscience of our society";[1]

4. Whether the trial court erred by giving the jury an instruction which allegedly suggested that it must return a verdict; and

5. Whether the trial court imposed a manifestly unreasonable sentence.

We affirm.

## FACTS[2] AND PROCEDURAL HISTORY

On January 12, 1997, Simmons and his brother watched football games and drank beer and tequila for about eight and one-half hours. At approximately 8:50 p.m., Simmons returned to the house he shared with his girlfriend, Linda Burleson. Simmons was angry and asked Burleson if she

wanted him to move out. Burleson replied "Yes, Mark, I don't think we have anything in common any more." (R. at 703.) Simmons went into their bedroom, picked up his .38 caliber handgun and carried it, in its case, to the kitchen.

Simmons then called Burleson into the kitchen. Simmons told her that he was going to blow her head off, aimed the gun at her and shot her in the chest. Simmons shot at Burleson again, but the gun misfired. Burleson ran to the front door and Simmons fired again, hitting the wall. As Burleson opened the front door and turned, Simmons fired again, striking her in the arm and chest. While Burleson ran toward a neighbor's house, Simmons fired again, grazing her back.

The neighbor let Burleson in and called the police. From the house he shared with Burleson, Simmons also called 911 and reported that "I just shot at my girlfriend." (R. at 427.) Police surrounded Burleson's house, and Simmons surrendered to police at approximately 12:45 the following morning. Police recovered the .38 caliber handgun, which Simmons had reloaded, along with .38 caliber ammunition. They also found a rifle and rifle ammunition.

Burleson was treated for two gunshot wounds to her chest, a minor or grazing wound along her right chest and a wound in her left arm and wrist. One of the bullets penetrated her diaphragm and another went through her liver. She also suffered a collapsed lung.

A jury found Simmons guilty of attempted murder and aggravated battery. At the sentencing hearing, the trial court sentenced Simmons to the Indiana Department of Correction for a thirty-year fixed

---

1. R. at 178.

2. Simmons' Statement of the Facts consists primarily of a witness-by-witness summary of the testimony at trial. This Statement of the Facts does not comply with our rules, which

require a narrative and fair statement of the facts devoid of argument, and not a summary of the testimony of each witness. *Dettman v. Sumner*, 474 N.E.2d 100, 102 n. 1 (Ind.Ct. App.1985).

term of imprisonment with twenty years added for aggravating circumstances.

## DISCUSSION AND DECISION

### 1. Admission of Rifle and Rifle Ammunition

■ In addition to the .38 caliber handgun used in the shooting and ammunition for that gun, the State sought to introduce into evidence a rifle and rifle ammunition found at the scene. Simmons' objection to the rifle and rifle ammunition as irrelevant was overruled. We find that the trial court did not abuse its discretion in admitting into evidence the rifle and rifle ammunition.

■ Trial courts have wide latitude with respect to the admissibility of evidence, and their rulings on evidentiary matters will not be disturbed absent an abuse of discretion resulting in the denial of a fair trial for the defendant. *Rafferty v. State*, 610 N.E.2d 880, 883 (Ind.Ct.App. 1993). The admissibility of evidence is predicated upon its relationship to an issue in the case; that is, evidence which tends to make the existence of a material fact more or less probable is relevant. Ind. Evidence Rule 401; *Lycan v. State*, 671 N.E.2d 447, 453 (Ind.Ct.App.1996). In order to be admissible, the evidence need only have some tendency, however slight, to make the existence of a material fact more or less probable, or tend to shed any light upon the guilt or innocence of the accused. *Lycan*, 671 N.E.2d at 453.

Simmons told the police that "well I just blindly went into the kitchen and just shot," (R. at 470), and "I wasn't really aiming at anything." (R. at 471.) At trial, Simmons testified that although he did not remember much of what happened the night of the shooting, he did remember shooting at the front door. In addition, Simmons testified that he was very familiar with guns. In finding that the rifle and rifle ammunition were admissible as relevant evidence, the trial court concluded that Simmons' possession of the rifle showed his familiarity with weapons; in the context of Simmons' claim that the shooting was something of an accident, evidence of his familiarity with weapons had a tendency, even if slight, to refute his argument that the shooting was accidental.

■ In light of the other evidence presented at trial, we cannot say the trial court abused its discretion in admitting into evidence the rifle and the rifle ammunition. However, even if this evidence was erroneously admitted, reversal of a conviction is appropriate only if the admission of the evidence prejudiced the defendant's substantial rights. *Dockery v. State*, 644 N.E.2d 573, 580 (Ind.1994). The improper admission of evidence is harmless error when the conviction is supported by such substantial evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Bonner v. State*, 650 N.E.2d 1139, 1141 (Ind. 1995). A reversal may be obtained only if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. *Hardin v. State*, 611 N.E.2d 123, 132 (Ind.1993).

■ Even if the rifle and rifle ammunition were erroneously admitted into evidence, any such error was harmless. Simmons admitted to the police that he shot Burleson. Burleson testified that Simmons shot her, and that he did not appear to be overly intoxicated at the time of the shooting. Police officers who interacted with Simmons both before and after his arrest testified that he did not appear incoherent, and that he was able to understand questions and follow instructions. In light of such substantial evidence, the admission of the rifle and rifle ammunition did not prejudice Simmons.

### 2. Jury View

Simmons contends that it was error for the trial court judge to accompany the

jury, along with two bailiffs, to a jury view of the scene of the shooting. According to Ind.Code § 35–37–2–5:

Whenever:

(1) the court believes that it is proper; or

(2) a party to the case makes a motion;

for the jury to have a view of the place in which any material fact occurred, the court may order the jury to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury is absent for this reason, no person, other than the officer and the person appointed to show them the place, may speak to the jurors on any subject connected with the trial.

▪ Initially, we note that Simmons did not object to the circumstances surrounding the jury view. Failure to make a timely objection so the court can rule on it at the appropriate time waives a claimed error. *Ingram v. State*, 547 N.E.2d 823, 829 (Ind.1989).

▪ However, even had the allegation of error not been waived, we would affirm because Simmons was not prejudiced by the trial court's act of accompanying the jury to the jury view. Simmons asserts that "[f]or the trial court judge to be present with the jury for the entire trip from the courthouse to the scene and then back to the courthouse without Simmons or even defense counsel present violates Simmons' state constitutional right to be present at every stage of the trial where the jury is required to be present." (Br. of Appellant at 18.)

The constitutional right Simmons asserts was not implicated by this jury view procedure. We note initially that Simmons and his counsel were present at the jury view, although they did not travel on the bus with the jury. Furthermore, what Simmons characterizes as a defendant's "constitutional right to be present at every stage of the trial where the jury is required to be present" appears to be limited to courtroom proceedings. As our supreme court noted in *Brown v. State*, 445 N.E.2d 82, 83 (Ind.1983), "[t]he defendant's presence *in the courtroom* is required at every stage of the proceedings which requires the presence of the jury.... [T]he defendant is presumed to have been present at those times when his presence *in court* is required." (emphasis supplied). We decline to adopt Simmons' broader interpretation of the extent of this right, under which interpretation a criminal defendant would have the right even to sit with the jury during deliberations. Simmons' constitutional rights were not violated by the circumstances of the jury view.

▪ Simmons further argues that "the mere fact the trial judge was with the jury for an extended period of time without Simmons or his counsel present clearly establishes the presumption of prejudice of Simmons' basic rights." (Br. of Appellant at 19.) A jury's view of a place is not intended as evidence, but is simply to aid the jury in understanding the evidence. *Johnson v. State*, 472 N.E.2d 892, 909 (Ind. 1985). We fail to see how the trial court judge accompanying the jury to the jury view could have resulted in any prejudice to Simmons.[3] Simmons presents no evidence, and the record does not reflect, that there was any conversation between the trial court judge and the jury, whether related or unrelated to the trial or the jury view. We will not find error where an "appellant's allegation of prejudice [regarding jury view procedures] is only supported by sheer conjecture and speculation." *Sceifers v. State*, 267 Ind. 687, 692, 373 N.E.2d 131, 134 (1978).

**3.** In *Grand Trunk W.R. Co. v. Pursley*, 530 N.E.2d 139, 141 (Ind.Ct:App.1988), we suggested that the presence of the trial court judge at a jury view might be useful, as the judge would be available to rule on the propriety of the actions of the litigant who was in charge of the jury view.

### 3. *Jury as Moral Conscience of Society*

■ Simmons argues that the following instruction was prejudicial:

You are instructed that in doing your duty as a juror you may call upon all of your experiences in life in determining the evidence. There is nothing mysterious or fanciful about the criminal justice system in this country and it is presumed that you, the jury, will not check your common sense at the courtroom door but will use such common sense in determining the guilt or innocence of the defendant herein.

You are further instructed that in determining the criminal responsibility of the defendant, if any, that you are the moral conscience of our society and must take into account all of the facts and circumstances in this case in order to determine the defendant's guilt or innocence.

(R. at 178.)

■ Jury instructions are largely within the discretion of the trial court, and we will review a court's decisions on jury instructions only for an abuse of discretion. *Nichols v. State*, 591 N.E.2d 134, 139 (Ind. 1992). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *Reaves v. State*, 586 N.E.2d 847, 855 (Ind.1992).

Simmons concedes that this type of instruction has been specifically approved by our supreme court in *Cox v. State*, 475 N.E.2d 664, 668–69 (Ind.1985), but contends that the instruction "has outlived its usefulness and also risks distracting a jury by its speculation on a sociological impact of the jury's verdict." (Br. of Appellant at 22.) Simmons urges us to follow the reasoning of *Griffin v. State*, 644 N.E.2d 561, 564 (Ind.1994), where our supreme court disapproved the use of an instruction to the jury that a defendant should not be "acquitted erroneously" because "[b]y acquittal of the guilty, a contempt of the law is aroused among the criminal classes and

the safeguards of society are weakened." We decline Simmons' invitation, following instead the reasoning of our supreme court in *Wilson v. State*, 697 N.E.2d 466, 477–78 (Ind.1998) where, in approving the "moral conscience" instruction to which Simmons objects, it stated that "[t]he instruction at issue here hardly runs that risk [of distracting a jury]. Instead, it reminds jurors of their special role in the system of justice using language we employ even in the most serious cases of all." The trial court did not err in so instructing the jury over Simmons' objection.

### 4. *Jury Instruction Suggesting the Jury Must Return a Verdict*

■ The State tendered, and the trial court gave, the following instruction:

I submit this case to you with the confidence you will faithfully discharge the grave duty resting upon you, bearing in mind that the liberty of the accused is not to be trifled away nor taken by careless or inconsiderate judgment. However, if after a careful consideration of the law and the evidence in this case, you are satisfied beyond a reasonable doubt that the defendant is guilty, you should return your verdict accordingly. Duty demands it, and the law requires it.

. . .

You must be just to the defendant and equally just to the State. As upright men and women charged with the responsible duty of assisting the court in the administration of justice, you will put aside all sympathy and sentiment and look steadfastly and alone to the law and the evidence in this case and return into court such a verdict as is warranted thereby.

(R. at 210.)

Simmons' objection to this instruction was that it placed "too much emphasis on the jury's duty asking them to return a verdict accordingly and while it does give a correct statement of the law we believe it pushes the jury too far into reaching a

verdict rather than if they are hung to say they are hung." (R. at 862.) We disagree.

These paragraphs of this jury instruction have been previously approved by our courts. *See Rowan v. State*, 431 N.E.2d 805, 818 (Ind.1982); *McNeely v. State*, 529 N.E.2d 1317, 1325 (Ind.Ct.App.1988). Furthermore, the jurors were instructed that they were not to "surrender [their] honest conviction as to the weight or effect for the mere purpose of returning a verdict." (R. at 208.) We find no error in the giving of this instruction.

### 5. *Manifestly Unreasonable Sentence*

■ Simmons was sentenced to a presumptive thirty-year sentence for attempted murder, and the court added twenty years for aggravating circumstances. We note initially that Simmons' sentence was within the range authorized by statute, *see* Ind.Code § 35–50–2–4 (establishing a presumptive thirty-year sentence for a Class A felony and permitting the addition of up to twenty years for aggravating circumstances). However, Simmons contends the trial court failed to give adequate consideration to Simmons' alcoholism as a mitigator. We disagree.

■ When a trial court imposes a sentence other than the presumptive sentence, we examine the record to ensure that the trial court's statement of its reasons for selecting the sentence imposed includes (1) identification of all significant mitigating and aggravating circumstances found; (2) specific facts and reasons which led the court to find the existence of each such circumstance; and (3) an articulation demonstrating the aggravating and mitigating circumstances have been evaluated and balanced in determining the sentence. *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996).

In the present case, the trial court identified three mitigating circumstances: (1) Simmons showed remorse for his actions; (2) Simmons' employment history indicated a likelihood of successful rehabilitation;

and (3) Simmons admitted he had abused alcohol and drugs. The trial court identified four aggravating circumstances: (1) Simmons' extensive prior criminal history coupled with a disdain for court-ordered authority; (2) Simmons' need for correctional treatment best provided by commitment to the Department of Correction in excess of the presumptive thirty-year term; (3) the nature and brutality of the offense; and (4) Simmons' domestic violence toward a cohabiting partner triggered by that partner's request that Simmons move out of the residence. In weighing these circumstances, the trial court found that the aggravating circumstances far outweighed the mitigating circumstances. (R. at 894.)

■ Sentencing is normally left to the sound discretion of the trial court. *Elmore v. State*, 657 N.E.2d 1216, 1219 (Ind.1995). A sentence will not be revised unless the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." *Riley v. State*, 711 N.E.2d 489, 496 (Ind.1999) (quoting Ind. Appellate Rule 17(B)). We further note that only one valid aggravating factor is necessary to enhance the presumptive sentence. *Sherwood v. State*, 702 N.E.2d 694, 699 (Ind.1998), *reh'g denied*. In the present case, the trial court found four valid aggravating factors.

The trial court carefully considered all the mitigating and aggravating circumstances presented, and did not abuse its discretion in ordering Simmons to serve a fifty-year sentence.

Simmons' convictions and sentence are affirmed.

SHARPNACK, C.J., and BAKER, J., concur.