**Eric L. WALES, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 31A01–0107–CR–279.

Court of Appeals of Indiana.

May 28, 2002.

Matthew Jon McGovern, Louisville, Kentucky, Attorney For Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Following a jury trial, Eric Wales was convicted of Robbery, as a Class C Felony, and of being an Habitual Offender. The trial court sentenced Wales to serve an aggregate term of twelve years. Wales now appeals.

We affirm.

### ISSUES

Wales presents the following issues for review:

1. Whether the trial court erred when it admitted evidence of Wales' 1985 robbery conviction?

2. Whether the officers' initial seizure of Wales violated the Fourth

Amendment to the United States Constitution?

3. Whether Wales' counsel was ineffective in violation of the Sixth Amendment to the United States Constitution?

4. Whether the pretrial identification of Wales violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution?

## FACTS AND PROCEDURAL HISTORY

In November of 2000, Deanna Sheets was working behind the counter at the Holiday Inn Express in Corydon, Harrison County. At approximately 10:00 p.m., a black male entered the hotel, walked to the counter, showed Sheets a handgun and stated, "This is a robbery." Sheets took cash out of the register and gave it to the man. The perpetrator warned Sheets not to go to the door or window in an attempt to see his vehicle and then left. Sheets called 911 and described the perpetrator as a black male of large build wearing a baseball cap with a Tommy Hilfiger logo, an olive green shirt, blue jeans, new brown work boots, and a black leather coat.

Officer Jeffrey Firkins and Sergeant Doug Standiford of the Floyd County Police Department heard a dispatch describing the robbery of the Holiday Inn Express in Harrison County. The dispatch described the suspect as a heavy set, black male wearing a Tommy Hilfiger baseball cap, a black leather coat and blue jeans. Officer Firkins and Sergeant Standiford positioned themselves along Interstate 64 and observed traffic coming out of Harrison County. The officers estimated it would take ten to fifteen minutes for a vehicle to reach their location from the Corydon area. The officers observed several black persons driving vehicles past them, but none fit the dispatch description. They eventually stopped Wales, who was driving a yellow Cadillac. Officer Firkins testified that they stopped Wales because he was a black male, had a "round face," and appeared to be wearing a black leather jacket. In addition, Officer Firkins recalled hearing a dispatch from the previous day where a robbery suspect in another county was observed leaving the scene in a yellow Cadillac.

After the officers apprehended Wales, Captain Todd Heavrin of the Floyd County Police Department arrived at the scene and decided to have Sheets come to the scene for a possible identification. Detective Roy Wiseman of the Harrison County Police Department transported Sheets to the scene. In route, Detective Wiseman told Sheets the police had detained a suspect that matched her description. He also informed Sheets that if she could not identify Wales as the perpetrator, he would be let go. Sheets positively identified Wales, and the officers arrested him. The officers' subsequent search of Wales revealed a large amount of cash and a handgun.[1] Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### Issue One: Evidence of Wales' 1985 Robbery Conviction

Wales first asserts that the trial court erred when it allowed the State to impeach him with evidence of a 1985 robbery conviction in violation of Indiana Rule of Evidence 609(b). Specifically, Wales argues that: (1) contrary to the court's ruling, he did not open the door to admission of his previous conviction; (2) the State failed to provide him with prior notice of its intent

---

1. An officer testified at trial that the handgun was incapable of being fired.

to use the evidence as required by Rule 609(b); and (3) the trial court failed to engage in a balancing of the evidence's probative value against its potential prejudicial effect in violation of Rule 609(b). Wales further claims that his conviction should be reversed because evidence of his 1985 robbery conviction influenced the jury's verdict. We address these arguments in turn.

 Indiana Rule of Evidence 609 provides, in relevant part:

(a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement.

(b) **Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or, if the conviction resulted in confinement of the witness then the date of the release of the witness from the confinement unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Unlike Indiana Rule of Evidence 403, which favors the admissibility of evidence, Rule 609(b) "presumes the exclusion of convictions more than ten years old." *Scalissi v. State*, 759 N.E.2d 618, 624 (Ind. 2001) (citing 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE, § 609.202, 170 (1991)). As our supreme court explained in *Scalissi:*

[T]he party seeking to admit such convictions must support the argument for probative value with specific facts and circumstances upon which the trial court may base a finding of admissibility. In addition, the trial court must balance the probative value against the prejudicial effect of the old convictions on the record. We review this ruling under Rule 609(b) for an abuse of discretion.

759 N.E.2d at 624 (quotations and citations omitted).

 In this case, during direct examination Wales' counsel asked him to talk about his "past record."[2] Wales explained that in 1990 he had a drug problem that caused him to commit a series of armed robberies over a period of a few days. Wales testified that he was "high" when he committed those crimes. He further stated that he felt guilty after committing the crimes and turned himself in to the police once he realized he was a suspect. Wales stated that he spent time in prison for those crimes and received drug counseling in prison.

On cross-examination, the State questioned Wales about his drug problem that caused him to commit the crimes in 1990 and asked Wales specific questions about each charge of robbery that resulted from the crime spree. Thereafter, the following exchange occurred:

2. Specifically, Wales' counsel stated, "Okay. Well, we're going to have to talk to the jury about your past record. So." Counsel then asked, "So, you have been convicted of some crimes?"

Q: Okay. Now, you just told the ladies and gentlemen of the jury that you've changed and you told them everything about yourself; is that right?

A: Up to this point, from my convictions in 1990 up to this point.

Q: What about before 1990?

At that point, Wales' counsel objected, and the State argued that Wales had opened the door to evidence of a crime Wales had committed in 1985.

During argument outside the presence of the jury, Wales' counsel admitted that she had no knowledge of Wales' 1985 robbery conviction, and the State admitted that it had failed to provide defense counsel with notice of intent to use the 1985 conviction prior to trial. The State explained that it did not include the 1985 conviction when it notified the defendant of its intent to introduce his 1991 convictions because the State "never dreamed" Wales would open the door to evidence of his earlier conviction. After argument on the issue, the court ruled in relevant part:

> Under the circumstances, it appears to me that the notice requirement [of] 609(b) is intended to require provision of notice that you've got to use a criminal conviction for impeachment purposes under the more than ten years old and it appears to the Court and the Court so finds that it could not have reasonably been calculated that this would have come up, and in addition, obviously, the Defendant knows his own criminal history. So, the Defendant's own criminal history couldn't possibly have been a surprise to him. In addition, the Court finds that the Defendant has opened the door and made it appear that he only commits robberies because of problems with drugs. He also specifically testified that he never had a drug problem that would cause him to commit robberies until 1990, sometime in 1990, the

same year prior to the commission of the five or six robberies or whatever it was. Therefore, it appears to me an appropriate question on cross examination to allow the Prosecuting Attorney to ask questions about this other robbery conviction, if in fact you are able to show there's a certified document.

■■ It is well settled that a defendant may open the door to questions otherwise not admissible under Rule 609. *Moffatt v. State*, 542 N.E.2d 971, 974 (Ind.1989); *Allen v. State*, 495 N.E.2d 180, 181 (Ind. 1986). In addition, a defendant who, through direct testimony, leaves the trier of fact with a false or incomplete impression of his criminal record may open the door to inquiries into his complete criminal history. 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 609.107, 166 (1995); *see also Allen*, 495 N.E.2d at 181 (defendant opened door when he testified on direct that he had only two convictions). In this case, Wales' direct testimony left the jury with the false and incomplete impression that his criminal history was attributable to his drug use in 1990. Moreover, Wales' counsel asked him broad, general questions about his criminal history as opposed to limiting the questioning to a specific conviction. *See* MILLER § 609.107, 166–67 (narrow, precisely drawn question about single prior conviction does not open door); *see also Fultz v. State*, 439 N.E.2d 659, 662 (Ind.Ct.App.1982) (precise, narrow questions on direct examination secure protections of *Ashton* exclusionary rule). Thus, the trial court did not abuse its discretion when it ruled that Wales opened the door to evidence of his 1985 conviction.

■ Regardless of whether Wales opened the door to the impeachment evidence, Wales argues that the court's admission of his 1985 conviction was error because the State failed to give notice of

its intent to use as evidence the 1985 conviction as required by Rule 609(b). In response, the State contends that where, as here, the defendant opens the door to evidence of a conviction older than ten years, the State is not required to meet Rule 609(b)'s notice requirement. We agree with the State.

This court has squarely addressed the notice requirement under Rule 609(b) on only one occasion. In *Giles v. State*, 699 N.E.2d 294, 297 (Ind.Ct.App.1998), Giles argued that the trial court erred when it allowed the State to present evidence of a 1976 conviction for uttering a forged instrument without providing him sufficient advance notice of its intent to impeach him with this conviction as required by Rule 609(b). While it was undisputed that the State failed to provide Giles with written notice calculated to comply with Rule 609(b), the State argued that Giles had sufficient notice from a habitual offender charge the State filed. *Id.* We rejected the State's argument and held that it was clear error for the court to allow the State to impeach Giles with evidence of his 1976 conviction without providing sufficient advance notice. *Id.* at 298. In so holding, we looked to district court decisions addressing Federal Rule of Evidence 609(b) and ultimately held "that it is error to permit the impeaching of a witness with a conviction over ten years old when the proponent of the evidence has failed to provide the adverse party with proper notice under 609(b)." *Id.*

Wales relies heavily on *Giles* to argue that the court in this case erred by allowing the State to inquire about his 1985 conviction without filing adequate notice under Rule 609(b). But there is no discussion in *Giles* of how or whether Rule 609(b)'s notice requirement is affected by a defendant who, during direct testimony, opens the door to questions on cross-examination regarding his prior criminal record. The facts in *Giles* do not involve a defendant who opened the door and, thus, that case is inapposite. Moreover, our supreme court decided a case after *Giles* involving Rule 609(b) that sheds light on the circumstances presented here.

In *Scalissi v. State*, 759 N.E.2d at 624, our supreme court addressed an argument by Scalissi that the State's use of his prior convictions to impeach his testimony violated Rule 609(b). Unlike in *Giles* and in this case, however, there was no issue in *Scalissi* about adequate notice under Rule 609(b). The issue in that case was whether the trial court erred in its balancing of the probative value against the prejudicial effect of the old convictions. *Id.* at 624–25. Nevertheless, at trial when Scalissi objected to the impeachment evidence, the State's response was that Scalissi had opened the door by his testimony on direct examination. *Id.* at 624. And as a preface to its analysis of Rule 609(b), the supreme court stated, "[w]e assume for purposes of analysis that Defendant did not 'open the door' to this evidence." *Id.* The logical inference from this statement is that had Scalissi opened the door to the impeachment evidence, Rule 609(b)'s procedural requirement that the trial court engage in the balancing process would be moot. "Opening the door" to evidence otherwise inadmissible is a well-recognized exception to the rules of evidence. *See Jackson v. State*, 728 N.E.2d 147, 152 (Ind.2000) (otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence); *see also* MILLER § 609.202, 172 ("A defendant may 'open the door' to cross examination concerning convictions otherwise too old for use under Rule 609(b)."). We see no reason to penalize the State for failing to comply with Rule 609(b)'s notice requirement, the other procedural requirement

imposed by the rule, when the defendant invites inquiries into his criminal past by opening the door to impeachment evidence. Therefore, because Wales opened the door by presenting a misleading view of his criminal past on direct examination, we conclude that the court did not abuse its discretion when it allowed the State to impeach Wales with evidence of his 1985 conviction even though the State had failed to provide notice under Rule 609(b).[3]

Finally, even if it were error for the trial court to admit this impeachment evidence, such error was harmless. When the trial court has erroneously admitted evidence, we "must disregard any error or defect which does not affect the substantial rights of the parties." Ind. Trial Rule 61. The improper admission of evidence is harmless error when the conviction is supported by such substantial evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Simmons v. State*, 717 N.E.2d 635, 638 (Ind.Ct.App.1999). A reversal may be obtained only if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict. *Hardin v. State*, 611 N.E.2d 123, 132 (Ind.1993).

In this case, the State questioned Wales about prior criminal convictions from both 1991 and 2000 in the presence of the jury. Moreover, the State's inquiry into Wales' 1985 conviction was minimal. After the court ruled to allow cross-examination on the issue, the State quickly established that Wales had a robbery conviction from 1985 and that he did not have a drug

problem at that time. In light of the other convictions discussed at trial by both Wales and the State, we cannot conclude that Wales' rights have been substantially affected by admission of this evidence because the jury had other evidence before it regarding Wales' credibility. *See Scalissi*, 759 N.E.2d at 625 (harmless error to allow impeachment evidence where other impeachment evidence submitted which cast doubt on defendant's credibility). Additionally, the conviction in this case is supported by substantial evidence of Wales' guilt. Sheets identified Wales as the perpetrator soon after the crime. When police searched Wales and his vehicle, they discovered a large amount of cash and a handgun. Our review of the record as a whole leads to the conclusion that there is no substantial likelihood that evidence of Wales' 1985 conviction contributed to the jury's verdict.

**Issue Two: Seizure of Wales' Vehicle**

Wales next argues that the trial court erred when it denied his motion to suppress because the police officers lacked reasonable suspicion to stop his vehicle in violation of the Fourth Amendment. As a result, Wales claims that the court should have suppressed all evidence obtained as a result of the illegal search. We disagree.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment. *Minnesota v. Dickerson*, 508 U.S. 366, 372,

---

**3.** We apply this same analysis to Wales' argument that the trial court erred when it failed to engage on the record in the balancing required by Rule 609(b). Because Wales

opened the door to evidence of his 1985 conviction, whether or not the trial court engaged in adequate balancing on the record is moot. *See Scalissi*, 759 N.E.2d at 624.

113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). However, one of the exceptions to the warrant requirement is where a police officer detains a person for investigative purposes. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In *Terry,* the Supreme Court held that law enforcement officers have a right to make a brief investigatory stop of a person provided they have a reasonable and articulable suspicion that the person has been, is, or is about to be engaged in criminal activity. *Id.* Whether a particular fact situation justifies an investigatory stop is determined on a case by case basis. *Platt v. State,* 589 N.E.2d 222, 226 (Ind. 1992). Reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. *Luster v. State,* 578 N.E.2d 740, 743 (Ind.Ct.App. 1991). The reasonable suspicion requirement is satisfied where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Carter v. State,* 692 N.E.2d 464, 466 (Ind.Ct.App.1997).

We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App. 2000), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant. *Id.*

In this case, Officer Firkins testified that he heard a dispatch over the police radio regarding a robbery at the Holiday Inn Express in Corydon. The dispatch provided a description of the suspect: a black male, heavy set, wearing a Tommy Hilfiger baseball cap, a black leather jacket, and a pair of blue jeans. Officer Firkins testified that he and Officer Standiford positioned themselves along Interstate 64 and waited what they thought was a reasonable amount of time for someone to drive from Harrison County to their position in Clark County. Officer Firkins stated that they stopped Wales because: (1) he was a black male with a "round face," (2) he was wearing a black jacket, (3) the "timing" of when Wales drove past the officers was consistent with the amount of time it would take a person to reach the officers' location from Harrison County, and (4) Wales was driving a yellow Cadillac, which fit a dispatch description Officer Firkins had heard the night before regarding a robbery committed by a black male in Jeffersonville, Clark County. Sergeant Standiford testified that they stopped Wales because he was a black male, heavy set, and wearing a black or dark jacket or shirt. In addition, according to Officer Firkins, the officers observed eight to ten black persons drive by before they saw Wales. Sergeant Standiford, who was supervising Officer Firkins, stated that he did not prompt Firkins to pull over Wales. Rather, when Wales passed, the officers looked at one another and proceeded to pull him over because he fit the description.

These facts, taken together, created reasonable suspicion to justify the investigatory stop of Wales' vehicle. Wales fit the physical description provided by the dispatch, he was traveling away from Harrison County at the time the officers estimated it would take a person to drive from Harrison County to their location, and Wales was driving a vehicle that had been described in a dispatch reporting a similar

crime.[4] Under these circumstances, the officers had a reasonable and articulable suspicion that Wales was the suspect in the robbery of the Holiday Inn Express and had a right to make an investigatory stop of Wales' vehicle to complete their investigation. The officer's stop of Wale comported with the Fourth Amendment.

## Issue Three: Effectiveness of Counsel

Wales asserts that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. *Id.* at 687–88, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

 A defendant must overcome with strong and compelling evidence the presumption that his counsel was competent. *D.D.K. v. State*, 750 N.E.2d 885, 889 (Ind.Ct.App.2001). Counsel is afforded considerable discretion in choosing trial strategy and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind.2001), *reh'g denied.* Isolated omissions or errors, poor strategy, or bad tactics are not in themselves evidence of deficient performance. *Brown v. State*, 691 N.E.2d 438, 446 (Ind. 1998). Finally, we note that the two prongs of the *Strickland* test are separate and independent inquiries. Therefore, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Williams v. State*, 706 N.E.2d 149, 154 (Ind.1999), *cert. denied.*

 In this case, Wales argues that his counsel was ineffective when she failed to file a motion to suppress the evidence of the robbery committed in Jeffersonville by the black male driving a yellow Cadillac. Specifically, Wales asserts that this evidence was only relevant to whether the officers had reasonable suspicion to stop his vehicle and, after the trial court determined the stop was legal, the evidence was irrelevant and highly prejudicial. To prevail on an ineffective assistance of counsel claim based upon counsel's failure to file motions on a defendant's behalf, the defendant must demonstrate that such motions would have been successful. *Danks v. State*, 733 N.E.2d 474, 489 (Ind.Ct.App. 2000), *trans. denied.* Here, Wales cannot show that the trial court would have granted a motion to suppress the evidence of the Jeffersonville robbery had counsel filed a motion. As the State points out, Wales'

---

**4.** It is also undisputed that at some point during the stop, the officers observed Wales put on a baseball hat with the Tommy Hilfiger logo and observed that he was wearing jeans. Wales correctly argues on appeal that these facts should not be considered in analyzing whether there was reasonable suspicion for the stop. A review of the transcript, however, shows that the trial court recognized these issues and found the officers had reasonable suspicion at the time the officers initiated the stop. That is, even without considering the baseball hat and jeans, the officers had reasonable suspicion.

counsel argued at trial that the police officers were "lax" in their investigation of this case. The facts known to the officers at the time they stopped Wales were therefore relevant. The State could have argued convincingly that the probative value of this evidence outweighed any potential prejudicial effect. Thus, Wales has not shown that counsel's performance was deficient.

Moreover, Wales has failed to meet the prejudice prong of the *Strickland* test. Even if counsel were deficient in failing to file a motion to suppress the evidence of the Jeffersonville robbery, we cannot conclude there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. The strongest evidence of Wales' guilt was Sheets' identification of Wales as the perpetrator soon after the crime. Sheets' initial description of the suspect was accurate and detailed. In addition, police officers searched Wales and his vehicle and discovered a large amount of cash and a handgun. Given the overwhelming evidence of Wales' guilt, that the jury heard evidence of the Jeffersonville robbery does not undermine our confidence in the outcome.

Wales also argues that, if his counsel opened the door to the evidence of his 1985 robbery conviction, *see* Issue One, *supra,* counsel was ineffective. Wales asserts that because counsel admitted she was unaware of Wales' 1985 conviction, she failed to research his criminal history adequately. By advising Wales to testify at trial without fully researching his criminal history, he claims counsel's performance was ineffective.

The decision whether to allow the defendant to testify is a tactical one. *Whitener v. State,* 696 N.E.2d 40, 42 (Ind. 1998). Moreover, allowing the defendant to discuss prior criminal history is a matter of trial strategy. *Grigsby v. State,* 503 N.E.2d 394, 397 (Ind.1987). Still, we do question counsel's failure to fully investigate Wales' complete criminal history prior to placing him on the stand to discuss past convictions. Even if we determine that counsel's actions amounted to error, Wales cannot show that he was prejudiced by counsel's isolated error. In our previous discussion of the State's use of the 1985 robbery conviction, we determined that even if the impeachment were improper, it amounted to harmless error. The jury in this case heard evidence of Wales' prior convictions from 1991 and 2000 and had facts available to question Wales' credibility notwithstanding the 1985 conviction. Thus, the admission of the evidence does not undermine our confidence in the outcome of Wales' conviction. *See Williams v. State,* 733 N.E.2d 919, 928 (Ind.2000) (defendant could not succeed on ineffective assistance claim where defendant had not shown there was a reasonable probability, but for counsel's alleged errors, the result of the proceeding would have been different).

In sum, our review of the record reveals that Wales received effective assistance. His counsel filed two pre-trial motions to suppress and chose a strategy at trial to attack both the officers' investigation of the case and Sheets' identification of Wales as the perpetrator. Even if we assume Wales' counsel committed isolated tactical mistakes, those mistakes did not undermine the outcome of Wales' trial and do not rise to the level of a constitutional violation.

### Issue Four: The Reliability of the Officers' Pre–Trial Identification Procedures

Wales' final argument is that the police officers' pre-trial identification procedures violated his right to due process

under the Fourteenth Amendment to the United States Constitution. In particular, Wales claims the pre-trial identification procedures were unnecessarily suggestive and tainted Sheets' subsequent in-court identification.

Before trial, Wales' counsel filed a motion to suppress all identification evidence, which the trial court denied. When the State introduced evidence of Sheets' pre-trial identification during trial, Wales' counsel failed to object. Nor did Wales' counsel object to Sheets' in-court identification of Wales. It is well settled that to preserve an error in the overruling of a pre-trial motion, the appealing party must have contemporaneously objected to the admission of the evidence at trial. *Culver v. State*, 727 N.E.2d 1062, 1066 (Ind.2000), *reh'g denied.* "This affords the trial court the opportunity to make a final ruling on the matter in the context in which the evidence is introduced." *Id.* As a result, Wales' failure to make contemporaneous objections at trial to evidence of the pre-trial and in-court identifications prevents him from raising this issue on appeal.

## CONCLUSION

In sum, the trial court did not abuse its discretion when it allowed the State to impeach Wales with evidence of his 1985 robbery conviction because Wales opened the door to that evidence. The officers who stopped Wales' vehicle had reasonable suspicion for the *Terry* stop, and Wales' trial counsel was not ineffective. Finally, Wales waived his challenges to the constitutionality of the pre-trial and in-court identifications.

Affirmed.

ROBB, J., and BAILEY, J., concur.