**Charles TAYLOR, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 71A04–1001–PC–6.

Court of Appeals of Indiana.

July 9, 2010.

**915**

Daniel M. Grove, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

After Charles Taylor initiated a direct appeal of his three convictions for Class B felony unlawful possession of a firearm by a serious violent felon, he filed a *Davis/Hatton* petition, which this Court granted. Taylor then filed a petition for post-conviction relief, which the post-conviction court denied. Taylor now appeals the denial of post-conviction relief and reinstates his direct appeal. Concluding that Taylor's trial counsel did not provide ineffective assistance by failing to object to the admission of the weapons and that Taylor's convictions do not violate Indiana's prohibition against double jeopardy, we affirm.

### Facts and Procedural History

Virginia Bloss was hanging curtains in her window when she saw three boys exit the house at 1615 South Arnold Street in South Bend, which was on the opposite side of the vacant lot next to her house. One of the boys fired a gun. The boys then ran back into the house. Bloss dialed 911.

Several police officers from the South Bend Police Department were dispatched to the area "in reference to a shot being fired by some juveniles." Tr. p. 7. As Officer Jeff Ransberger approached the house at 1615 South Arnold Street, he noted the silhouette of a person in an upstairs room "[p]eering out the window, looking out to see what was going on, [and] mov[ing] back and forth from one side of the window to the other." *Id.* at 8. The officers established a perimeter around the house and called for anyone inside the house to come out. Three boys exited the house. The officers patted down the boys and found no weapons. Officer Ransberger asked if anyone remained in the house. The boys said no. One of the boys said, "[I]t wasn't us with the gun, it wasn't us with the gun." *Id.* at 26. While some of the officers "stayed ... outside with the juveniles and secured them separately in their patrol vehicles," *id.* at 18, other officers entered the house to look for armed or injured parties. In a bedroom on the first floor, Officer David Johnson found a shotgun, in plain view, leaned up against the doorjamb of the closet, and a large gun case next to it. He placed both the shotgun and the gun case on the bed. Officer Johnson opened the gun case and found an AK–47 inside. He then had Officer Stephen Berger monitor the weapons while he continued assisting in the warrantless search of the house. Finding no armed or injured parties, the officers left the house.

The officers contacted Lieutenant Scott Hanley and the boys' parents. Before Lieutenant Hanley arrived, Taylor and another individual arrived. Taylor said he lived at the house and one of the boys was

his stepson. The officers briefly told Taylor what was going on. Taylor wanted to go into the house, so Officer Johnson accompanied him inside. Officer Johnson later testified that because he had received information from Officer Ransberger that the handgun fired by the juveniles was gray or silver, he asked Taylor if he owned such a gun:

> While inside the house, I asked Mr. Taylor if he owned a gray or silver revolver. No response back to me. I then asked him, I said, do you own a gray or silver handgun? Again, no response. So then I asked him, I said, do you have any idea how these kids would have gotten their hands on a handgun? And Mr. Taylor said to me, something to the effect, my boys know better than to fuck with my guns because one of 'em got arrested or got in trouble for robbing the ice cream man with my gun last year.

*Id.* at 285–86. Lieutenant Hanley arrived and explained to Taylor that the officers had found a shotgun in the bedroom. Taylor admitted that the bedroom was his. To prove that he lived there, Taylor went into the house with Lieutenant Hanley and retrieved mail addressed to him at that house. Although Taylor was initially going to sign a permit to search the house, he then told the officers that they would have to get a search warrant. After further conversation, Taylor told Lieutenant Hanley that he had a conviction for attempted robbery. At that point, Taylor was arrested.

The police obtained and executed a search warrant for the house. In the same bedroom that the shotgun and AK–47 were found, officers found a black .45 caliber handgun, a chrome gray 9 millimeter handgun, as well as ammunition for both handguns. They also retrieved mail showing Taylor as a resident of 1615 South Arnold Street.

The State charged Taylor with four counts of Class B felony unlawful possession of a firearm by a serious violent felon. Ind.Code § 35–47–4–5. Each count corresponded to each weapon found: a 12–gauge Mossberg shotgun, an SAR 17.62 caliber rifle, a Taurus .45 caliber handgun, and a Smith & Wesson 9 millimeter semiautomatic handgun. Appellant's App. p. 5–6.

Before trial, Taylor moved to suppress all evidence seized from 1615 South Arnold Street on grounds that the officers had "neither valid consent nor exigent circumstances to justify the warrantless search." *Id.* at 42. At the hearing on the motion to suppress, Officer Johnson justified the warrantless entry:

> We know that there was a shot fired. We know that our witness is telling us, at this point, that the shot came from that home. We have our juveniles telling us that they weren't the ones shooting. So we can only assume, at this point, that they were the ones being shot at.

Tr. p. 39. The trial court granted the motion to suppress with regard to the AK–47 Officer Johnson found when he opened the gun case during the warrantless search and denied the motion with regard to all other evidence recovered from the house.

At trial, the shotgun and both handguns were admitted into evidence. Taylor did not object to the admission of the shotgun. His objection to the admission of the handguns was only with regard to a chain of custody issue, and the trial court overruled it. The jury found Taylor guilty of three counts of Class B felony unlawful possession of a firearm by a serious violent felon. The trial court sentenced Taylor to concurrent ten-year sentences for each conviction

to be served at the Indiana Department of Correction.

Although Taylor initially filed a notice of appeal, this Court allowed him to dismiss the appeal without prejudice in order to develop an additional evidentiary record in post-conviction proceedings pursuant to the *Davis/Hatton* procedure.[1]

In his petition for post-conviction relief, Taylor contended that his trial counsel was ineffective for failing to object to the admission of the weapons. Taylor argued that the shotgun was inadmissible because it was discovered during a "warrantless protective sweep without probable cause to believe that [ ] exigent circumstance[s] existed." Appellant's App. p. 115. He argued that the handguns were inadmissible because they were found during a search authorized by a warrant relying on information gleaned from the initial unlawful search. After evidence was submitted, the trial court, without a hearing, denied Taylor's petition for post-conviction relief. Taylor now appeals.

**Discussion and Decision**

As for his post-conviction issue, Taylor contends that his trial counsel was ineffective for failing to object to the admission of the weapons. As for his direct appeal issue, Taylor contends that his convictions violate Indiana's prohibition against double jeopardy.

**I. Ineffective Assistance of Counsel**

 Taylor contends that his trial counsel was ineffective for failing to object

to the admission of the shotgun and the two handguns. In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5); *Henley v. State*, 881 N.E.2d 639, 643 (Ind.2008). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Henley*, 881 N.E.2d at 643. The reviewing court will not reverse the judgment unless the petitioner shows that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 643–44. Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). We will reverse a post-conviction court's findings and judgment only upon a showing of clear error, which is that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* at 644. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004). We accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.*

 We review ineffective assistance of counsel claims under the two-part test provided by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Ben–Yisrayl v. State*, 729 N.E.2d

---

1. The *Davis/Hatton* procedure involves a termination or suspension of a direct appeal already initiated, upon appellate counsel's motion for remand or stay, to allow a post-conviction relief petition to be pursued in the trial court. *State v. Lopez,* 676 N.E.2d 1063, 1069 (Ind.Ct.App.1997) (citing *Hatton v. State,* 626 N.E.2d 442 (Ind.1993); *Davis v. State,* 267 Ind. 152, 368 N.E.2d 1149 (1977)), *trans. denied. See also* Ind. Appellate Rule 37(A)

("At any time after the Court on Appeal obtains jurisdiction, any party may file a motion requesting that the appeal be dismissed without prejudice or temporarily stayed and the case remanded to the trial court ... for further proceedings. The motion must be verified and demonstrate that remand will promote judicial economy or is otherwise necessary for the administration of justice.").

102, 106 (Ind.2000), *reh'g denied.* To prevail, a petitioner must demonstrate both that counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Id.* Failure to satisfy either prong will cause the claim to fail. *French v. State,* 778 N.E.2d 816, 824 (Ind.2002). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001), *reh'g denied.* A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

■ To establish ineffective assistance for counsel's failure to object, a petitioner must show that the trial court would have sustained the objection had it been made and that the petitioner was prejudiced by the failure to object. *Jones v. State,* 847 N.E.2d 190, 197–98 (Ind.Ct.App.2006) (citing *Wrinkles v. State,* 749 N.E.2d 1179, 1192 (Ind.2001)), *reh'g denied, trans. denied.* Stated another way, the petitioner must demonstrate that had the objection been made, the trial court would have had no choice but to sustain it. *Oglesby v. State,* 515 N.E.2d 1082, 1084 (Ind.1987).

As a preliminary matter, we dismiss the State's first two arguments on this issue. First, the State contends that Taylor failed to establish deficient performance for failing to object because defense "counsel had

no reasonable expectation that if he objected to the admission of the shotgun and the handguns that the trial court would have changed its ruling and sustained his objection." Appellee's Br. p. 14. The State's argument appears to misconstrue the applicable rule. It makes no difference whether counsel had a reasonable expectation that the trial court would change its ruling upon objection. Instead, the proper inquiry is whether the trial court would have had no choice but to sustain the objection; that is, whether the evidence should have been excluded. *See Skinner v. State,* 270 Ind. 52, 53, 383 N.E.2d 307, 308 (1978) (indicating that in an ineffective assistance claim regarding a failure to object to the admission of a gun into evidence, the petitioner must show that the evidence should have been excluded). Second, the State contends that Taylor cannot establish prejudice because, "even if trial counsel improperly failed to object at trial to the admission of the evidence, it did not preclude Taylor from raising the issue as fundamental error." Appellee's Br. p. 15. The State does not provide any citation which stands for the proposition that the opportunity to raise an issue as fundamental error defeats a finding of prejudice in an ineffective assistance claim, and we decline to entertain it here.

### A. Shotgun

■ Taylor asserts that an objection to the admission of the shotgun would have been sustained because the initial search that resulted in the discovery of the shotgun was an unlawful search pursuant to the Fourth Amendment of the United States Constitution. The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable

cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The protections of the Fourth Amendment have been extended to the states through the Fourteenth Amendment. *Taylor v. State*, 842 N.E.2d 327, 330 (Ind.2006). The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, homes, and belongings. *Id.* A search or seizure may generally only be conducted pursuant to a lawful warrant. *Bryant v. State*, 660 N.E.2d 290, 300 (Ind.1995). Because warrantless searches are per se unreasonable, the State bears the burden of establishing that a warrantless search falls within one of the well-delineated exceptions to the warrant requirement. *Johnson v. State*, 766 N.E.2d 426, 432 (Ind.Ct.App.2002), *trans. denied.*

 The officers had no warrant when they entered the house and discovered the shotgun. The State contends that the warrantless search was a proper protective sweep. In *Maryland v. Buie*, the United States Supreme Court defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). As an incident to arrest officers may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334, 110 S.Ct. 1093. A search beyond those parameters is permissible only when there are "articulable facts which, taken together with the

rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.*

 The parties disagree on whether an arrest is a necessary component of a protective sweep. Taylor argues that an arrest is necessary while the State argues that an arrest is not necessary. An arrest occurs when a police officer interrupts the freedom of the suspect and restricts his or her liberty of movement. *Moffitt v. State*, 817 N.E.2d 239, 246 (Ind.Ct.App.2004), *trans. denied.* We need not decide whether an arrest is a necessary component of a protective sweep because we find the detention of the juveniles in separate patrol vehicles during the warrantless search to be sufficiently analogous to an arrest as it interrupted the freedom of the juveniles and restricted their liberty of movement.

The warrantless search here, which took place beyond the area immediately adjoining the place of the detention, was thus a valid protective sweep only if there were articulable facts which would warrant a reasonably prudent officer in believing that the house harbored an individual posing a danger to those on the scene. The post-conviction court did not err in finding such articulable facts here. At the time the officers entered the house, they were responding to a call that three juveniles had fired a shot. When the officers called for anyone inside the house to come out, three boys exited the house. The officers patted them down but recovered no weapons. One of the boys said, "[I]t wasn't us with the gun, it wasn't us with the gun." These facts support a rational inference that the house harbored an individual armed with the weapon that was fired. *See Smith v. State*, 565 N.E.2d 1059, 1062 (Ind.1991) (" '[T]here must be articulable facts which, taken together with the ra-

tional inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" (quoting *Buie*, 494 U.S. at 334, 110 S.Ct. 1093)), *overruled on other grounds by McGowan v. State*, 674 N.E.2d 174, 175 (Ind.1996).

The shotgun was thus found in plain view during a valid protective sweep and was therefore admissible. Taylor has failed to show that the trial court would have sustained a Fourth Amendment objection to its admission.

### B. Handguns

■■■■■ Taylor asserts that an objection to the admission of the handguns would have been sustained because their discovery was the fruit of the initial illegal search. He contends, "Had the warrant application not mentioned the discovery of the [shotgun and rifle], there would not have been enough information in it to support a finding of probable cause." Appellant's Br. p. 12. The fruit of the poisonous tree doctrine bars not only evidence directly obtained during an unlawful search or seizure, but also evidence derivatively gained as a result of information learned or leads obtained during that unlawful search or seizure. *Adams v. State*, 762 N.E.2d 737, 745 (Ind.2002).

Taylor's entire ineffective assistance argument regarding the admission of the handguns is based on his assumption that the initial search was unlawful. However, as we have just concluded that the initial search was a valid protective sweep, this argument fails.

Because Taylor has not shown that the trial court would have sustained objections to the admission of the weapons, he has not shown that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. The post-conviction court did not err by concluding that Taylor's trial counsel did not provide ineffective assistance by failing to object to the admission of the weapons.

### II. Double Jeopardy

■■■■■ Taylor also contends that his convictions violate Indiana's prohibition against double jeopardy. The double jeopardy clause of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. Whether Taylor's convictions violate the prohibition against double jeopardy presents an issue of statutory interpretation, which is an issue of law we review *de novo*. *See Brown v. State*, 912 N.E.2d 881, 893 (Ind.Ct.App.2009), *trans. denied*. The classic test for multiplicity is whether the legislature intended to punish individual acts separately or the course of action which they make up. *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 302–03, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Am. Film Distribs., Inc. v. State*, 471 N.E.2d 3, 5 (Ind.Ct.App.1984), *reh'g denied, trans. denied*). Unless there appears in the statute a clear intent to fix separate penalties for each firearm unlawfully possessed, the issue should be resolved against turning a single transaction into multiple offenses. *See id.* We have stated:

> "[L]egislative intent in enacting a statute is the key consideration when determining whether the double jeopardy clause protects against multiple punishments for the same offense under a particular statute. Specifically, the whole point of whether multiple offenses of the same statute are committed during a single transaction focuses on the definition of the crime involved. Thus, the touchstone of whether the double jeopardy clause is violated is the legislature's articulated intent."

*Id.* (quoting *Robinson v. State*, 835 N.E.2d 518, 521 (Ind.Ct.App.2005)).

 The primary purpose of statutory interpretation is to ascertain and give effect to the legislature's intent. *Id.* at 894 (citing *State v. Oddi–Smith*, 878 N.E.2d 1245, 1248 (Ind.2008)). The language of the statute itself provides the best evidence of legislative intent, and we strive to give the words in the statute their plain and ordinary meaning. *Id.* (citing *Oddi–Smith*, 878 N.E.2d at 1248).

The relevant portion of the statute at issue here provides, "A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony." I.C. § 35–47–4–5(c). The legislature used the term "possesses a firearm" as opposed to "possesses firearms," necessarily indicating that the offense refers to the possession of a single firearm. In giving the words "a" and "firearm" their plain and ordinary meaning, we conclude that the legislature's intent was to make each unlawful possession of one firearm by a serious violent felon a separate and independent crime. *See Brown*, 912 N.E.2d at 894, 896 (holding that legislature's listing in child exploitation and possession of child pornography statutes of objects in the singular indicates legislative intent to criminalize each instance of child exploitation and each possession of child pornography as a distinct violation of statutes).

 Instead of focusing on statutory language, Taylor specifically argues that his convictions violate Indiana's common law prohibition against double jeopardy. He points to four specific examples illustrating our tenets of double jeopardy and ostensibly contends they support a finding of double jeopardy here. First, he notes that multiple enhancements based on a single act or episode of bodily injury are prohibited. Second, he notes the single larceny rule, where taking several articles of property at the same time and place constitutes a single offense. The rationale behind the single larceny rule is that "the taking of several articles at the same time from the same place is pursuant to a single intent and design." *Raines v. State*, 514 N.E.2d 298, 300 (Ind.1987). Third, he notes that multiple shots fired at a person during a single episode of conduct constitute a single offense of attempted murder. The rationale behind this rule is that "actions which are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose and continuity of action as to constitute a single transaction." *Nunn v. State*, 695 N.E.2d 124, 125 (Ind.Ct.App.1998).

Taylor fails to provide any explanation of how these examples are sufficiently comparable to the situation here. We find that each unlawful possession of a weapon is a separate and distinct act. Nothing in Taylor's conduct indicates a single act or episode, a single intent and design, or a singleness of purpose.

As his last example, Taylor notes that a defendant who simultaneously possesses multiple packages of cocaine in different places can be convicted of only one possession offense. Indeed, in *Campbell v. State*, 734 N.E.2d 248, 250–51 (Ind.Ct.App.2000), we found Judge Shields' separate concurring opinion on rehearing in *Young v. State*, 564 N.E.2d 968, 973 (Ind.Ct.App. 1991), *trans. denied*, to be particularly persuasive: "[T]he possession of the cocaine on a particular occasion is but one offense; the effect of the accumulated quantity possessed is to aggravate the possession rather than to break it into multiple possessions."

922

However, the statute governing possession of cocaine is different from the statute governing unlawful possession of a firearm by a serious violent felon in two important ways. First, while the statute governing possession of cocaine does not identify individual acts of possessing cocaine, the statute at issue here criminalizes the act of possessing one distinct firearm. Here, in accordance with statute, the State's charging information alleged four separate counts, with one count corresponding to each weapon found.

Second, the statute at issue here provides no aggravation of the offense in the event a defendant possesses more than one firearm. In contrast, the statute governing possession of cocaine provides, "A person who ... knowingly or intentionally possesses cocaine (pure or adulterated) or a narcotic drug (pure or adulterated) ... commits possession of cocaine or a narcotic drug, a Class D felony...." Ind.Code § 35–48–4–6(a). The offense is elevated to a Class C felony if the amount of the drug weighs three grams or more. *Id.* § 35–48–4–6(b)(1)(A). The offense is elevated to a Class A felony if the amount of the drug weighs three grams or more and the possession was on a school bus or in, on, or within one thousand feet of school property, a public park, a family housing complex, or a youth program center. *Id.* § 35–48–4–6(b)(3). As noted by Judge Shields, a greater amount of cocaine possessed serves to aggravate the crime rather than to break it into multiple possessions. We decline to find double jeopardy based on multiple convictions for possession of cocaine sufficiently analogous to Taylor's issue here.

We thus conclude that Taylor's convictions for unlawful possession of a firearm by a serious violent felon do not violate Indiana's prohibition against double jeopardy.

Affirmed.

NAJAM, J., and BROWN, J., concur.