# FOR PUBLICATION



**FILED**

May 09 2012, 8:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN PINNOW**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ASHANTI CLEMONS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1108-PC-737 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven J. Rubick, Judge
Cause No. 49G01-0509-PC-148898

**May 9, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Ashanti Clemons appeals the post-conviction court's denial of his amended petition for post-conviction relief. Clemons raises two issues for our review:

1. Whether he received ineffective assistance of trial counsel.

2. Whether he received ineffective assistance of appellate counsel.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts underlying Clemons' amended petition for post-conviction relief were set out in his appeal from his conviction for voluntary manslaughter:

> On August 30, 2005, Clemons, who lived with his mother, Letiate Tate ("Tate"), argued with Prentice Webster ("Webster") in the upstairs hallway of Tate's apartment building. Shortly thereafter, Webster died from multiple gunshot wounds. Police searched the apartment complex for witnesses and were told that Webster was heard saying to Clemons "get off of me," Tr. p. 93, and that someone had been entering and exiting Tate's apartment. A witness saw a man run into an apartment wearing a white t-shirt and leave a few minutes later wearing a black shirt. Police knocked on Tate's door, and when she opened it, they observed bullets, a box full of live ammunition rounds, and several live rounds scattered on Tate's living room floor, all of which were consistent in caliber, brand, and composition to the fired casings. The police also observed a white t-shirt on Tate's living room couch. Tate informed the police where they could find Clemons. When the police located Clemons, he was wearing a black shirt and agreed to go to the police station for questioning.
>
> Once there, the police conducted a videotaped interview of Clemons. A police officer read aloud the advisement of each <u>Miranda</u> right to Clemons and then handed him the Advice of Rights/Waiver of Rights form ("the form") for him to initial by each right if he understood it. Clemons wrote his initials next to each right. The officer then read aloud to Clemons the waiver of rights portion of the form and again handed him the form and requested that he initial by each statement to indicate his understanding. Clemons wrote his initials next to each statement and signed the waiver. During this process, the officer explained certain words and concepts from the form that he feared Clemons might not understand. For example, the

2

officer explained the meaning of the word "coercion" and what it meant to say that he would "make a statement." Ex. p. 37-38. Clemons gave no indication that he did not understand what these rights meant after they were explained to him. During his interview with the officer, Clemons made certain comments indicating to the officer that he understood and was fully aware of his rights. For instance, Clemons stated, "You see what I'm saying, I mean I, like you read, read my rights, you see what I'm saying, I don't have to, I've got the right, you see what I'm saying to stop talking at any time or whatever." Id. at 57. Clemons also admitted to carrying a gun without a license and that he fired the gun.

The State charged Clemons with Count I, Voluntary Manslaughter as a Class A felony,[] and Count II, Carrying A Handgun Without A License as a Class A misdemeanor,[] which was later enhanced to a Class C felony due to a previous conviction. On June 1, 2005, Clemons filed a Motion To Suppress the videotaped statements, which was denied following a hearing. At the conclusion of his trial, a jury found Clemons guilty of carrying a handgun without a license but was hung as to the voluntary manslaughter charge. Clemons pursued a direct appeal of his handgun conviction. On appeal, Clemons argued that the trial court abused its discretion when it admitted the videotape and transcript of statements he gave to police, claiming that the police violated his Fifth Amendment right to counsel when they failed to stop the interview after he requested counsel. Concluding that Clemons' procedural questions and comments about attorneys did not constitute an unequivocal request for an attorney, a panel of this Court held that the police did not violate his Fifth Amendment right to counsel and that therefore the trial court did not abuse its discretion when it admitted the evidence. See Clemons v. State, No. 49A02-0608-CR-722 (Ind. Ct. App. May 10, 2007), trans. denied ["Clemons I"].

During Clemons' retrial on the voluntary manslaughter charge, Clemons again objected to the admission of his videotaped statements on the basis that he did not knowingly and voluntarily waive his right to counsel. The trial court denied Clemons' objection, stating that the totality of the circumstances indicated that Clemons "freely and voluntarily waived his rights and that he did have sufficient comprehension and understanding to knowingly waive his rights." Tr. p. 168. At the conclusion of his retrial, the jury found Clemons guilty of voluntary manslaughter.

Clemons v. State, No. 49A02-0703-CR-319, at *1-*2 (Ind. Ct. App. Dec. 31, 2007)

("Clemons II"). We affirmed Clemons' voluntary manslaughter conviction, id. at *6, and

Clemons did not seek transfer.

3

On July 15, 2008, Clemons filed a pro se petition for post-conviction relief. On October 3, appointed counsel filed an amended petition for post-conviction relief. On September 14 and November 16, 2010, the post-conviction court held a hearing on the amended petition. And on July 20, 2011, the trial court denied post-conviction relief. Clemons now appeals.

## DISCUSSION AND DECISION

### Standard of Review

In post-conviction appeals, our standard of review is well established:

> [T]he petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Henley, 881 N.E.2d at 643. The reviewing court will not reverse the judgment unless the petitioner shows that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44. Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). We will reverse a post-conviction court's findings and judgment only upon a showing of clear error, which is that which leaves us with a definite and firm conviction that a mistake has been made. Id. at 644. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). We accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id.

Taylor v. State, 929 N.E.2d 912, 917 (Ind. Ct. App. 2010), trans. denied.

Clemons' request for post-conviction relief is premised on his contentions that he was denied the effective assistance of trial and appellate counsel in violation of the Sixth Amendment to the United States Constitution. A claim of ineffective assistance of counsel must satisfy two components. Strickland v. Washington, 466 U.S. 668 (1984).

4

First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. Id. at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694.

**Issue One:  Effective Assistance of Trial Counsel**

Clemons first contends that he was denied the effective assistance of trial counsel, Brian Lamar, because Lamar conceded that Clemons' request for counsel during interrogation was equivocal and because counsel did not obtain school records before the first trial as proof of Clemons' low intellect and inability to waive his Miranda rights. We address each contention in turn.

We first consider Clemons' claim regarding Lamar's decision to concede at the first trial's suppression hearing that Clemons' request for counsel during his post-arrest interrogation was equivocal.  During his post-arrest interrogation, Clemons stated:

[Detective]:  You're 27 years old. I want to express how much of a man you were here to us today.  How truthful and honest you were here to us today, I want to be able to express that.

[Clemons]:  Oh you're going to be able to express it, only thing I, I just want my momma sitting right here, you know what I'm saying can I have somebody sitting here with me though?

[Detective]:  I, I understand that . . .

[Clemons]:  That, that's all I'm asking, I mean I ain't asking saying [sic] I want, I want to talk to my lawyer.  I ain't said none of that.

[Detective]:  I know.

[Clemons]:  You see what I'm saying, I mean I, like you read, read my rights, you see what I'm saying, I don't have to, I've got the right, you see what I'm saying to stop talking at any time or whatever.

5

[Detective]: Exactly.

[Clemons]: You see what I'm saying, ask for a lawyer or something like that, you see what I'm saying. Hey look could I still have a lawyer? Sit here and talk to me right now?

[Detective]: I'm sorry what?

[Clemons]: If, you know what I'm saying I don't have a paid lawyer could I still have a, you all said I could have a lawyer or somebody come talk to me right now, sit here while I . . .

[Detective]: As I stated at any time you can have a lawyer present when talking to us. Okay. Now . . .

[Clemons]: even when it's paid or not?

[Detective]: A lawyer is not going to let you talk to us. But if you want one, we'll walk out of here right now and it's all yours. You know. If you do, but what you think you need to do [sic]. I will not violate your civil rights. I've made a promise to your mother and I'm going to stand up to the promise. I mean it looks like this guy got shot through the leg and shot through the arm and got hit in the neck.

[Clemons]: Let me see.

Clemons I Exhibits at 203, Clemons II Exhibits at 56-57. Again, Clemons argues that his trial counsel's performance was ineffective because Lamar conceded that Clemons' request for counsel was equivocal during his post-arrest interview.

We initially consider the State's brief argument that, under the law of the case doctrine, we are bound by the prior determination that Clemons "did not [unequivocally] invoke his right to counsel." Appellee's Brief at 14. The law of the case doctrine "is a discretionary tool by which appellate courts decline to revisit legal issues already determined on appeal in the same case and on substantially the same facts." Godby v. Whitehead, 837 N.E.2d 146, 152 (Ind. Ct. App. 2005) (citation omitted), trans. denied. To invoke the law of the case doctrine, the matters decided in the prior appeal clearly must appear to be the only possible construction of an opinion, and questions not conclusively decided in the prior appeal do not become the law of the case. Id. (citation

6

omitted). The doctrine is based upon the sound policy that once an issue is litigated and decided, that should be the end of the matter. Id. (citation omitted).

Here, the State asserts only that Clemons "may not make a claim of prejudice that contravenes" our prior determinations in the two direct appeals that Clemons' request for an attorney was equivocal. Appellee's Brief at 14. The State is correct that we determined in Clemons' direct appeal from his handgun conviction that his request for counsel was equivocal. See Clemons I, No. 49A02-0608-CR-722, slip op. at *2.

In his petition for post-conviction relief and here, Clemons argues that his trial counsel was ineffective for conceding that his post-arrest request for an attorney was equivocal. But a review of the transcript of Clemons' post-arrest interview with the detectives shows that Clemons did not clearly and unequivocally request the assistance of counsel. We agree with this court's conclusion in the direct appeal from the handgun charge that

> his statements indicate he understood he had signed the waiver of rights form prior to speaking with the officers and he understood the police had to stop questioning him if he requested counsel. His questions regarding whether he could obtain counsel were procedural questions that were not an unequivocal request for counsel.

Id. at *2. As such, Clemons cannot show that his trial counsel performed deficiently when he correctly conceded this point.

Clemons next contends that his trial counsel was ineffective for failing to introduce certain evidence at the first suppression hearing in order to show that Clemons' waiver of Miranda rights was not knowing and voluntary. Specifically, trial counsel did not offer into evidence at the first suppression hearing school records showing that

7

Clemons has a low IQ. Clemons has not shown that he was prejudiced by trial counsel's failure to obtain and offer Clemons' childhood school records.

At the post-conviction hearing, Lamar testified that he had attempted to obtain Clemons' school records before the first trial but was unsuccessful. In particular, Clemons' mother had claimed to have the records but was unable to find them. Lamar then instructed one of his investigators to obtain the records from the school but was finally able to get them shortly before the second trial when Clemons' mother personally delivered a consent form to the school. Lamar then offered the school records into evidence at the voluntary manslaughter retrial. The records showed that Clemons, who was twenty-seven years old at the time of his arrest, had an IQ of 74 when he was eleven years old.

The evidence shows that Lamar took steps to obtain Clemons' school records in advance of the first trial and was unsuccessful through no fault of his own. Further, the same trial judge presided over both trials, and even after the trial court reviewed such records at the second trial's suppression hearing, the court found that Clemons' waiver of his Fifth Amendment rights was knowing and voluntary. On these facts, Clemons has not shown that Lamar's performance was deficient.

**Issue Two: Appellate Counsel**

Clemons also contends that he was denied effective assistance of appellate counsel, Julie Slaughter. Specifically, he asserts that Slaughter was ineffective because she failed to petition for transfer from this court's decision in Clemons II affirming his voluntary manslaughter conviction and thereby procedurally defaulted him from seeking

8

habeas corpus relief. He maintains that the post-conviction court erroneously relied on Yerden v. State, 682 N.E.2d 1283 (Ind. 1997), in finding that Clemons had not shown ineffective assistance of appellate counsel. We must agree.

In Yerden, a direct appeal, our supreme court considered a claim that interlocutory appellate counsel was ineffective for having failed to make a particular argument, to show how prejudice would result by newly passed rules of evidence, and to seek transfer to the supreme court. Applying the Strickland test, the court noted that the defendant had "literally provided no argument, much less any cogent argument, explaining how the lawyer who took the interlocutory appeal performed below prevailing norms." Id. at 1286. Only then did the court note in dictum that a "healthy majority of lawyers who lose before the Indiana Court of Appeals, for example, elect not to seek transfer. On the face of it, without any explanation, a lawyer who does not petition for transfer has simply performed according to the statistical norm." Id. As a result, Yerden's claim of ineffective assistance failed. Id.

The opinion in Yerden is distinguishable. There the defendant did not explain how failing to petition for transfer constituted representation below an objective standard of reasonableness. On that ground, our supreme court held that the defendant had failed to show ineffective assistance of counsel. Id. Conversely, and as discussed in more detail below, Clemons has shown that, under O'Sullivan v. Boerckel, 526 U.S. 838 (1999), the failure to seek review from the highest appellate court of the state may result in procedural default of a federal habeas claim and, therefore, could constitute performance below that standard. Thus, Yerden is inapposite, and we are left to

determine whether Clemons has shown that his appellate counsel was ineffective in this case.

Clemons correctly observes that a defendant must exhaust all state court remedies, including a request for discretionary review by a state court of last resort, in order to preserve his right to request federal habeas corpus relief. The Supreme Court has held that,

> [b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. The exhaustion doctrine, first announced in Ex parte Royall, 117 U.S. 241, 29 L. Ed. 868, 6 S. Ct. 734 (1886), is now codified at 28 U.S.C. § 2254(b)(1) 1994 ed., Supp. III).

Boerckel, 526 U.S. at 842. The exhaustion doctrine, codified at 28 U.S.C. § 2254 provides in part that an

> application for writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the court of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). A habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "The exhaustion requirement is satisfied if the federal issue has been properly presented

10

to the highest state court, either by direct review of the conviction or in a post-conviction attack." Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994).

Here, again, following the direct appeal of Clemons' voluntary manslaughter conviction, his appellate counsel did not petition for transfer. Clemons argues that, as a result, he is prevented from exhausting his state remedies by having the supreme court consider whether his Fifth Amendment right to counsel was violated during his post-arrest interrogation. Clemons is incorrect.

A petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. Miller v. Danforth, 2012 U.S. Dist. LEXIS 30017, at *16 n.6 (S.D. Ga. March 6, 2012) (citing McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005)). But state remedies are yet available to Clemons regarding his Fifth Amendment claim. Specifically, if Clemons were to petition for transfer from the present post-conviction decision, the alleged denial of his Fifth Amendment right to counsel would be before the Indiana Supreme Court when it considers the issues Clemons has raised in this appeal. Therefore, Clemons has not been denied the opportunity to exhaust his state remedies regarding his alleged denial of the Fifth Amendment right to counsel. As such, his right to seek habeas review has not been procedurally defaulted, and, therefore, Clemons has not shown ineffective assistance by his appellate counsel.

## Conclusion

Clemons has not shown that his trial counsel was ineffective for conceding at his first trial that his post-arrest request for counsel was equivocal. Nor has he shown

11

ineffectiveness when his trial counsel, despite investigation, was unable to secure and offer into evidence Clemons' sixteen-year-old schools records as evidence of his low IQ and, therefore, his purported inability to knowingly waive his right to counsel. Finally, Clemons has not demonstrated that his appellate counsel was ineffective for failing to file a petition to transfer from his voluntary manslaughter conviction. Because he may still seek review by the Indiana Supreme Court by appealing the instant decision, Clemons has not been procedurally defaulted. As such, he has not demonstrated that his appellate counsel's representation was deficient. We affirm the denial of Clemons' amended petition for post-conviction relief.

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.