Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2013, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ARTHULA MILLER**
New Castle Correctional Facility
New Castle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ARTHULA MILLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1212-PC-664 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
The Honorable Stanley E. Kroh, Master Commissioner
Cause No. 49G04-0702-PC-19096

**November 21, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Pursuant to the *Davis/Hatton* procedure,[1] Arthula Miller brings this consolidated direct and post-conviction appeal challenging his convictions on eight felony counts and two misdemeanor counts. Miller raises three issues for our review, which we restate as: (1) whether the prosecutor engaged in misconduct; (2) whether the post-conviction court erred in concluding that Miller was not denied the effective assistance of trial counsel; and (3) whether the post-conviction court abused its discretion when it denied Miller's request to subpoena certain witnesses and documents for the post-conviction evidentiary hearing. Finding no error or abuse of discretion, we affirm his convictions.

## Facts and Procedural History

The facts most favorable to Miller's convictions indicate that Miller first met Pamela Taylor in 1995 when they were in the Army Reserves. They got in touch again in 2002, and Miller moved into Taylor's home in 2004. Within a few months, the two became romantically involved. The relationship was very stressful for Taylor because Miller was very controlling and did not get along with her son. In early 2006, a break-in occurred at Taylor's home. Someone came in through her son's bedroom window and stole a video

---

[1] The *Davis/Hatton* procedure involves the termination or suspension of a direct appeal that has already been initiated, upon appellate counsel's motion for remand or stay, in order to allow a post-conviction relief petition to be pursued in the trial court. *Slusher v. State*, 823 N.E.2d 1219, 1222 (Ind. Ct. App. 2005) (citing *Hatton v. State*, 626 N.E.2d 442, 443 (Ind. 1993), and *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149, 1151 (1977)). If, after a full evidentiary hearing, the petition for post-conviction relief is denied, the appeal can be reinitiated. *Id*. Under such circumstances, the direct appeal and the post-conviction relief appeal are consolidated. *Id*. Therefore, in addition to the issues initially raised in the direct appeal, the issues litigated in the post-conviction relief proceeding may also be raised. *Id*. "This way, a full hearing and record on the issues will be included in the appeal." *Id*. The *Davis/Hatton* procedure is particularly useful where a defendant needs to develop an evidentiary record to support a claim of ineffective assistance of counsel. *See Peaver v. State*, 937 N.E.2d 896, 899 (Ind. Ct. App. 2010), *trans. denied* (2011).

game collection. Miller insisted on and paid for the installation of a monitored security system. Miller was the only one at the home when ADT came to install the security system. After the installation, Miller told Taylor the password and passcode for the new system. Thereafter, in September 2006, Taylor asked Miller to move out of the home. Miller finally moved out on October 28, 2006.

On November 20, 2006, Taylor came home to discover that the screen had been cut on her son's bedroom window. While waiting for a police officer to arrive and take a report, Taylor had a telephone conversation with Miller. Miller then came over to the house but stayed out of view while the police officer was there. Immediately after the officer left, Miller attacked Taylor. He pinned her against the wall and yelled that he did not understand why they were no longer together. Miller ordered Taylor into the bedroom and told her to take her clothes off. Miller pulled a knife from behind his back and held it to Taylor's neck. He told her repeatedly that they were going to have sex and that she had "better do it right." Trial Tr. at 66. As Taylor cried, Miller forced her to perform oral sex on him. He then bound her hands together with zip ties. Miller put a condom on and had intercourse with Taylor. Afterward, Taylor begged Miller to leave, but he held the knife to her and told her that he would have to kill her so that he would not go to jail. Miller placed a pillow on Taylor's face attempting to smother her. He finally stopped, and Taylor promised that she would not tell anyone about the incident. Taylor started to feel an allergic reaction from the latex condom that Miller had used. Miller suddenly became calm and apologetic. After repeated assurances that she would not tell anyone what had happened, Miller left. Taylor did not

report the incident that night because of her promises to Miller. Taylor also did not report the incident the next day out of fear that no one would believe her because she had failed to report it right away.

Miller called Taylor almost every day following that incident. Sometime in December, Taylor agreed to meet Miller for dinner. The dinner was very upsetting for Taylor. Miller also made arrangements to spend New Year's Eve with Taylor. Taylor had consensual sex with Miller that night. Because Taylor's ex-husband is in prison for killing an ex-girlfriend, Taylor hoped that being with Miller consensually would perhaps help them end their relationship on a "good note." *Id*. at 77.

On January 27, 2007, Taylor awoke to the sound of her car alarm. She called 911. After reviewing video from surveillance cameras that she had installed, Taylor believed that Miller had opened her Jeep with a key. Taylor left Miller a voicemail, and Miller arrived at the house before police. Miller denied that it was him on the video. Due to the poor video quality, the police were unsure of whether it was Miller on the video. Officers did not arrest Miller. Taylor told Miller that she knew he was the perpetrator and that she was going to get her locks changed.

On Monday, January 29, 2007, Taylor left work early to get a no-contact order against Miller. She called Miller and told him to stay away from her. That same day, William Jones was waiting for his children's school bus near Taylor's home when he observed a man, later identified as Miller, park his vehicle a significant distance from Taylor's home and then walk to her home. Jones watched as Miller entered Taylor's residence through the overhead

garage door. Jones found Miller's activity suspicious and called 911 to report the activity.

The next evening, January 30, 2007, Taylor returned home from work and errands. As she turned off her security system, she suddenly saw Miller standing in the hallway of her home. Miller was wearing a mask and gloves. He demanded the videotape from her car break-in. Taylor told him that she had taken the videotape to work. Miller ordered Taylor to take off her clothes. After she complied, he had her put on a robe and ordered her to leave two messages on his cell phone. He instructed her about what to say on the messages, including that she missed him, loved him, and wanted to see him. Miller showed Taylor that he had brought a lambskin condom so that she would not suffer an allergic reaction. He forced her to perform oral sex on him and then forced her to have sexual intercourse. He covered her face with the same pillow as before, causing Taylor to experience severe neck pain. Miller explained to Taylor that everything was her fault. He ordered her to go into the bathroom so that she could wash herself in a bath. After forcing her to spend what seemed like almost forty minutes in the bathtub, Miller finally let Taylor get out of the tub. He instructed her to leave a third message on his cell phone. He told her to say something about how he did not come over that night, that she really wanted to see him, and "another I love you." *Id.* at 95. After Taylor spent hours talking and assuring Miller that she would not call the police, Miller finally left. Taylor called the police, reported that she had been raped, and then went to the hospital emergency room for a sexual assault examination.

Indianapolis Metropolitan Police Department Sergeant Craig McCartt took Miller's statement on January 31, 2007. One of the first things Miller told Sergeant McCartt was that

5

he had voice messages from Taylor on his phone. Miller initially denied seeing Taylor or speaking with her on January 30, but later changed his story and stated that he went to Taylor's house on that date at her invitation. Miller admitted to having sexual intercourse with Taylor while at her house, but claimed it was consensual. Miller denied having keys to Taylor's residence.

Officers subsequently executed a search warrant of Miller's apartment. In Miller's bedroom closet, officers found a serrated knife later identified by Taylor as the knife used in the November attack, as well as a key to Taylor's Jeep and a key to the garage door of Taylor's residence. Officers also found zip ties in Miller's linen closet. A search of Miller's vehicle revealed lambskin condoms and gloves which Taylor also later identified from the January attack.

On February 2, 2007, the State charged Miller with ten counts: count I, class A felony rape; count II, class A felony criminal deviate conduct; count III, class B felony criminal confinement; count IV, class B felony burglary; count V, class B felony rape: count VI, class B felony criminal deviate conduct; count VII, class D felony criminal confinement; count VIII, class D felony intimidation; count IX, class A misdemeanor domestic battery; and count X, class A misdemeanor battery. Notwithstanding the number and seriousness of the charges, and contrary to the advice of his appointed counsel, Miller insisted on requesting and proceeding with a speedy trial. Following a jury trial on April 9 and 10, 2007, the jury found Miller guilty as charged. On April 17, 2007, the trial court sentenced Miller to an aggregate term of ninety years. Miller, by counsel, timely initiated a direct appeal to this

6

Court. However, pursuant to the *Davis/Hatton* procedure, Miller filed a motion to dismiss the appeal without prejudice, which we granted on October 5, 2007.

On March 7, 2011, Miller filed a pro se petition for post-conviction relief, and on June 16, 2011, he filed a pro se amended petition for post-conviction relief. The post-conviction court held an evidentiary hearing on October 18, 2011. Thereafter, on December 5, 2012, the post-conviction court issued its findings of fact, conclusions of law, and judgment denying Miller's petition for relief. This appeal followed.

## Discussion and Decision

### *I. Direct Appeal: Prosecutorial Misconduct*

We first address Miller's direct appeal contention that the prosecutor committed various acts of misconduct, such as soliciting perjured testimony, withholding evidence material to the defense, and permitting a witness to nod her head instead of answering verbally while testifying. To properly preserve a claim of prosecutorial misconduct, the defendant must ask the trial court, at the time the misconduct occurs, to admonish the jury or move for a mistrial if admonishment is inadequate. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). "Failure to request an admonishment or mistrial waives the claim, unless the defendant can demonstrate that the misconduct rises to the level of fundamental error." *Id.* Fundamental error is a narrow exception which places a heavy burden on the defendant. *Id.* To avoid procedural default, the defendant must demonstrate error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due

process … present[ing] an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

It appears from our review of the record that Miller failed to object, request an admonishment, or move for a mistrial regarding any of his alleged instances of prosecutorial misconduct. Moreover, on appeal, Miller neither claims nor attempts to demonstrate fundamental error. Therefore, his claims of prosecutorial misconduct are waived.

We note that, in addition to being procedurally defaulted as a direct appeal issue, Miller's prosecutorial misconduct claims may not be considered in terms of post-conviction relief because freestanding claims of fundamental error are unavailable in post-conviction proceedings. *See Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Id*. To the extent that some of Miller's claims of prosecutorial misconduct cover the same points as his post-conviction relief allegations of ineffective assistance of trial counsel, those claims will be disposed of below in the context of ineffective assistance.

## *II. Post-Conviction: Ineffective Assistance of Counsel*

In his petition for post-conviction relief, Miller contends that he was denied the effective assistance of trial counsel. Our supreme court has explained that post-conviction proceedings "are not super-appeals and provide only a narrow remedy for subsequent collateral challenges." *State v. Cooper*, 935 N.E.2d 146, 148 (Ind. 2010). A petitioner for

post-conviction relief bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). When appealing the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). The reviewing court will not reverse the judgment unless the petitioner shows that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 643-44. Further, the post-conviction court here issued findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). We will reverse those findings and judgment only upon a showing of clear error, which leaves us with a definite and firm conviction that a mistake has been made. *Taylor v. State*, 929 N.E.2d 912, 917 (Ind. Ct. App. 2010), *trans. denied*. We accept the post-conviction court's findings of fact unless clearly erroneous, but we accord no deference to legal conclusions. *Id.* "The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses." *Id.*

To prevail on a post-conviction claim of ineffective assistance of counsel, a defendant must satisfy the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must show that counsel's performance was deficient. *Id.* at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness, committing errors so serious that the defendant was deprived of the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. Second, the defendant must establish prejudice; that is to say, the defendant must demonstrate that there is a reasonable

9

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. Failure to satisfy either component will cause a claim to fail, and most ineffective assistance claims can be resolved by a prejudice inquiry alone. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). On appeal, we strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied* (2003).

## *A. Failure to Investigate and Prepare for Trial*

Although Miller raises several claims of ineffective assistance, he concentrates on his allegation that his counsel provided ineffective assistance in failing to properly investigate his case and prepare for trial. Specifically, Miller argues that his counsel failed to conduct a "professional investigation" into the facts and circumstances of his case and further contends that counsel failed to conduct a "professional interview" of Miller as part of his trial preparation. Appellant's Br. at 37-49.

While it is undisputed that effective representation requires adequate pretrial investigation and preparation, it is well settled that we should resist judging an attorney's performance with the benefit of hindsight. *Badelle v. State*, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), *trans. denied*. Accordingly, when deciding a claim of ineffective assistance for failure to investigate, we apply a great deal of deference to counsel's judgments. *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002). Establishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what the

10

investigation, if undertaken, would have produced. *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied* (1999). "This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result." *Id.*

Miller's trial counsel, Ben Jaffe, testified at the post-conviction hearing that although he admittedly did not meet with Miller face-to-face at the jail prior to trial, he did speak with Miller prior to trial, and that, at Jaffe's instruction, Miller sent him a detailed letter regarding his version of events and the defenses he wished to pursue. Jaffe stated, "We were very familiar with the defenses that you wanted to set forth. So in terms of knowing where the case was going and how we were going to defend against it, we were on the same page." PCR Tr. at 14. Additionally, we agree with the post-conviction court that a review of the trial transcript reveals that Jaffe appeared more than familiar with the State's evidence and Miller's version of events as demonstrated in his opening statement, direct examination of Miller, cross examination of the State's witnesses, and closing argument.

Miller maintains that "[h]ad counsel conducted a professional investigation, counsel would have learned that Miller had no reason to rape Taylor." Appellant's Br. at 38. Contrary to Miller's implication, Jaffe vigorously pursued that precise defense, alerting the jury to evidence of the ongoing consensual sexual relationship between Miller and his accuser as well as inconsistencies in her story. That a defense strategy was ultimately unsuccessful does not mean that counsel was constitutionally ineffective. *Wilkes v. State*, 984 N.E.2d 1236, 1245 (Ind. 2013). Miller has failed to show what additional information

11

could have been discovered by counsel that would have had a reasonable probability of changing his counsel's defense strategy, much less the result of his trial. The post-conviction court determined that Miller failed to demonstrate ineffective assistance on this issue, and Miller has not met his burden on appeal to show that the evidence conclusively points to a contrary conclusion.[2]

## B. Remaining Claims of Ineffective Assistance

Miller raises additional claims of ineffective assistance of counsel, including allegations that his trial counsel failed to subpoena requested witnesses, failed to request severance of charges, and failed to object to testimony and numerous pieces of evidence.[3] However, in the thirty-eight pages of his pro se appellant's brief that are dedicated solely to these remaining claims of ineffective assistance, Miller provides this Court with virtually no information to show how his counsel's representation fell below an objective standard of

---

[2] Prior to the commencement of trial, Jaffe alerted the trial court, in Miller's presence, that because of time constraints due to Miller's speedy trial request, Jaffe had not had a chance "to check on a couple of things [Miller] thinks are important." Tr. at 25. Jaffe informed the court that his efforts to encourage Miller to waive his speedy trial request and to move for a continuance of the trial date had been unsuccessful. When specifically asked by the trial judge if he would like a continuance to allow his attorney to follow up on some details, Miller declared that he wished to proceed with the trial. We agree with the post-conviction court that Miller "made a knowing and informed decision to proceed to trial. Miller's attempt now to fault his trial counsel for his own insistence upon a speedy trial is not well taken." Appellant's App. at 127.

[3] As noted earlier, some of Miller's direct appeal claims of prosecutorial misconduct overlap with his ineffective assistance of counsel claims. For example, Miller argues that the prosecutor committed misconduct by allowing the victim to commit what Miller purports to be perjury and that his counsel was ineffective for failing to object to such purportedly perjured testimony. Similarly, Miller argues that the prosecutor committed misconduct by allowing the victim to nod her head while testifying rather than requiring her to verbally respond and that his counsel was ineffective for failing to object to the same. To the extent that these issues overlap and can be considered on post-conviction relief in the context of ineffective assistance of counsel for failure to object, as we discuss below, these claims are waived for lack of cogent argument.

reasonableness or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.

For example, Miller asserts that his counsel was ineffective for failing to contact or subpoena his requested witnesses, and he cites legal authority supporting that general proposition. However, Miller does not name any witnesses that he believes should have been contacted, and he makes no attempt to educate us as to what information or testimony those witnesses would have provided. *See Lee v. State*, 694 N.E.2d 719, 722 (Ind. 1998) (when ineffective assistance argument is premised on failure to present witnesses, petitioner must offer evidence identifying the witnesses and what their testimony would have been), *cert. denied*. As to his claim that counsel was ineffective for failing to file a motion for severance of charges, Miller makes no attempt to demonstrate why severance was appropriate or that such motion would have been successful. *See Wales v. State*, 768 N.E.2d 513, 523 (Ind. Ct. App. 2002) (to prevail on ineffective assistance claim based upon counsel's failure to file motions, petitioner must demonstrate that motions would have been successful), *trans. denied*. Regarding Miller's numerous claims of counsel's failure to object, Miller makes no attempt to demonstrate that objections would have been sustained if made. *See Benefield v. State*, 945 N.E.2d 791, 799 (Ind. Ct. App. 2011) (to prevail on ineffective assistance claim based upon counsel's failure to object, petitioner must show that objection would have been sustained).

Miller's argument on these claims can be summarized as a series of bald assertions of error followed by citation to legal authority. What remains conspicuously absent is cogent

reasoning explaining how the legal authority supports the assertions of error. As we have

explained,

> Parties to an appeal are required to present cogent argument supported with adequate citation to authority because it promotes impartiality in the appellate tribunal. A court which must search the record and make up its own arguments because a party has not adequately presented them runs the risk of becoming an advocate rather than an adjudicator. A brief should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues. On review, we will not search the record to find a basis for a party's argument nor will we search the authorities cited by a party in order to find legal support for its position.

*Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012) (internal quotation marks

omitted), *trans. denied*. In sum, Miller's claims of ineffective assistance of counsel are not

supported by cogent reasoning and are therefore waived.[4] *See* Ind. Appellate Rule

46(A)(8)(a). Waiver notwithstanding, his bald assertions are insufficient to carry his burden

of establishing prejudice by a preponderance of the evidence. The post-conviction court

properly denied Miller's claims of ineffective assistance of trial counsel.

### III. Post-Conviction Court's Denial of Request for Subpoenas

As a final matter, Miller argues that the post-conviction court deprived him of a fair

evidentiary hearing when, although it granted his request to subpoena his trial attorney, it

denied his request to subpoena several additional witnesses and documents for the post-

---

[4] Miller includes two additional claims of ineffective assistance of counsel on appeal that he did not raise in his original or amended petition for post-conviction relief. Namely, he argues that his counsel failed to object when all "African-Americans were procedurally excluded from the jury" and that his counsel permitted the prosecutor to commit a "*Brady*" violation. Appellant's Br. at 73-78, 98. For an argument to be available in post-conviction proceedings as to why counsel was ineffective, the petitioner must have raised such ground in his petition for post-conviction relief. *See Bahm v. State*, 794 N.E.2d 444, 445 (Ind. Ct. App. 2003), *opinion on reh'g*, *trans. denied*. Consequently, these two additional claims are also waived.

conviction hearing. Specifically, Miller sought additional subpoenas for "Pamela Taylor, Anne Harrigan, William Jones, Sylvester Coleman, Terry Tyler, 'ADT Tech from March 9, 2006', as well as various records and documents." Appellant's App. at 42.

Indiana Post-Conviction Rule 1(9)(b) provides, "If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony." That rule further provides, "If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant, it shall enter a finding on the record and refuse to issue the subpoena." *Id.* When determining whether to issue subpoenas, the post-conviction court has broad discretion, and we will reverse its decision only for an abuse of discretion. *Johnson v. State*, 832 N.E.2d 985, 994 (Ind. Ct. App. 2005), *trans. denied.* "An abuse of discretion has occurred if the court's decision is against the logic and effect of the facts and circumstances before the court." *Id.*

The post-conviction court in this case concluded that, because Miller was asserting an ineffective assistance of counsel claim, he had provided sufficient information to support the issuance of a subpoena for his trial attorney. However, regarding the additional witnesses and documents, the court determined, "It appears Petitioner seeks to re-litigate various claims not available under the Rules for Post-Conviction Relief: the Court finds no support for issuance of the additional subpoenas sought by Petitioner and DENIES the request." Appellant's App. at 42.

15

Here, Miller has not included in his appendix his request for the subpoenas or his affidavit stating the reason the additional witnesses' testimony is required and the substance of the expected testimony. While this does not result in waiver of his claim, *see* Ind. Appellate Rule 49(B) (party's failure to include any item in appendix shall not waive any issue or argument), our review is constrained solely to the arguments provided in his appellant's brief. According to Miller, he sought the testimony of the various witnesses to present the post-conviction court with "material evidence and testimony not heard at trial," "crucial relevant testimony," and "documentary evidence directly impacting on the issue of innocence." Appellant's Br. at 115-16. Miller provides us no information regarding the actual substance of the expected testimony.

We agree with the post-conviction court's conclusion that the matters about which Miller intended to examine these witnesses were not related to issues cognizable during post-conviction proceedings. Essentially, Miller wanted a do-over of his trial. He was not so entitled. We remind Miller that post-conviction proceedings create a narrow remedy and are not "super appeals." *Cooper*, 935 N.E.2d at 148. The post-conviction court acted within its discretion in refusing to issue the additional requested subpoenas. Accordingly, we affirm.

Affirmed.

BARNES, J., and PYLE, J., concur.